**Mittelle Franklin GODWIN, Plaintiff,**

v.

**RHEEM MANUFACTURING COMPANY, Defendant.**

**Civil Action No. 97–D–1377–N.**

United States District Court,
M.D. Alabama,
Northern Division.

July 24, 1998.

Julian L. McPhillips, Montgomery, AL, for Plaintiff.

Henry Clay Barnett, Jr., Constance S. Barker, Montgomery, AL, for Defendant.

## MEMORANDUM OPINION & ORDER

DE MENT, District Judge.

Before the court is Defendant's Motion for Summary Judgment, and Memorandum of Law in Support thereof ("Def.'s Mem. in Supp."), filed May 14, 1998. Plaintiff filed an Opposition Response on June 22, 1998. Defendant filed a Reply to Plaintiff's Opposition Response ("Def.'s Reply") on July 6, 1998. After careful consideration of the arguments of counsel, the relevant law and the record as a whole, the court finds that Defendant's Motion is due to be granted in part and denied in part. The court further finds that Plaintiff's claims for punitive damages and mental distress damages are due to be stricken.

## JURISDICTION AND VENUE

The court properly exercises subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question). The Parties do not contest personal jurisdiction or venue.

## SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court

has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *see also Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348; *see also Anderson*, 477 U.S. at 249, 106 S.Ct. 2505.

## FINDINGS OF FACT

Plaintiff Mittelle "Terry" Godwin ("Plaintiff" or "Godwin") was employed by Defendant Rheem Manufacturing Company ("Defendant" or "Rheem") from September 1990 until his termination on May 14, 1997. Prior to his termination, Godwin worked as a Die Setter on the second shift in Rheem's Waterheater Division. In this position, Godwin reported to work at 4:00 p.m. and left work at around 12:00 midnight.

Rheem has a "no-fault" attendance policy, whereby employees accrue one point for any unscheduled day of absence from work and one half point for any tardiness or partial day absence. An unscheduled absence of four hours or more counts as a full point. No points are accrued under Rheem's "medical leave plan" (which provides for three or more days of absence due to illness), or FMLA leave, as these are not considered unscheduled absences. Time off from work that is approved in advance similarly is not counted as an unscheduled absence. Each employee's absence is measured on a rolling 12–month period, and old points drop off of the employee's record after 12 months. The accumulation of 6 or more points within a rolling 12 month period is considered "unsatisfactory" attendance, and an employee who accrues 8 or more points within a rolling 12 month period is issued a written warning. Any employee who accumulates 12 points within a 12 month period is suspended pending termination.

A personnel report dated April 15, 1997, showed Godwin as having "up to eight" absentee points on that date. (Def.'s Ex. 4, Personnel Report dated April 15, 1997.) This report was issued to Godwin as a "First

Written Warning" advising him that he had accumulated greater than 8 points. (*Id.*)

On or about April 25, 1997, Godwin unexpectedly received temporary physical custody of his fifteen year old daughter, Jennifer, due to difficulties Jennifer was having with her mother. The custody was from approximately April 25, 1997 until May 5, 1997. On April 29, 1997, Jennifer required sinus surgery. On April 28, 1997, Godwin informed Sherry Gilliard, Rheem's Assistant Manager of Human Resources, that he would need to leave work four hours early so he could get a full night's sleep before taking his daughter to the hospital for the surgery at 7:00 a.m. the next morning. Godwin received a Family Medical Leave Act ("FMLA") application form from Gilliard. Gilliard advised Godwin that his leave would most likely qualify for protection under the FMLA. Godwin contends that, at this point, he informed Gilliard that he would need to be off of work both to take his daughter to he surgery, and also to stay with her during her recovery.

On April 29, 1997, the date of his daughter's surgery, Godwin reported for work as scheduled. On April 30, 1997, Godwin called in prior to his shift and informed the day shift supervisor that he would be late for work. Godwin never reported for work that day. Godwin accumulated one point for his absence on that date.

On May 1, 1997, Plaintiff again called in prior to his shift beginning. He again informed the day shift supervisor, John Lonza, that he would not be reporting for work on that date. Godwin contends that he informed Lonza he would need to be out of work to care for his daughter while she recovered from surgery; he further contends that he mentioned that he had contracted poison ivy. Later on that date, Godwin appeared at Rheem to collect his paycheck. Godwin spoke with his supervisor, Barney Wright. Godwin contends that he told Wright about his daughter's surgery and recovery, and showed Wright the effects of his poison ivy. Godwin further contends that he spoke with Willie Jackson about his daughter's surgery and the poison ivy.

The following day, Friday, May 2, 1997, the plant was closed. On that date, Godwin sought care for a case of poison ivy from his physician, Dr. Karst, during an office visit for back pain. Dr. Karst did not diagnose Godwin's condition as poison ivy, however, and only told Godwin to return if the condition got any worse.

Godwin was not scheduled to work the next day, Saturday, May 3, 1997. On that date, Godwin sought treatment from a physician at a 24–hour medical service, Pri–Med, for poison ivy. The physician treated Godwin with caladryl and benadryl; Godwin was not given any prescription medication and he did not return for a follow-up visit.

Godwin was scheduled to work the following Monday, May 5, 1997. Godwin failed to report to work on that date. Rather, Godwin called into work and spoke with "lead man" Willie Jackson. Jackson testified that Godwin informed him that he would not be able to come into work because he had poison ivy.

Godwin returned to work on May 6 1997. On this date, Godwin presented a medical excuse from Dr. Karst stating that he was under the doctor's care from May 2, 1997 through May 6, 1996. The excuse does not state what, if any, treatment Godwin received. (Pl.'s Ex. 2–B.) Rheem did not consider Godwin's absences on May 1 and May 5 for poison ivy to be "medical leave" under its attendance policy, as the no-fault attendance policy allows regular medical leave only when an employee is absent for medical reasons for 3 or more days and presents a medical document excusing all three days. Rheem contends that Godwin was absent for the poison ivy for only 2 days and failed to present the requisite medical documentation. Hence, Godwin accumulated points for these absences.

On May 8, 1997, Godwin left work 6 hours early. He told co-employees that his daughter had run away from home and was still missing. Godwin accrued one point for his absence that day.

On May 9, 1997, Godwin called into work and said that he would be taking a day's vacation because his truck broke down. He was told that vacation requests could not be granted unless they were submitted at least 24 hours in advance. Godwin took the day's

vacation, and accumulated a point for his absence.

Upon Godwin's May 9, 1997 absence, his supervisor, Barney Wright, conducted a "rough tally" of his absentee points, and determined that Godwin had at least 12 points. (Def.'s Ex. 10, Aff. of Dolphus (Barney) Wright ("Wright Aff."), ¶ 12; Def.'s Ex. 8, Sherry Gilliard ("Gilliard Aff."), ¶ 2.) When Godwin returned to work on May 12, 1997, he was given a second warning letter and notice of suspension pending verification of his absentee points. On that same date, Godwin returned to his daughter's doctor, Dr. Cawthorn, for a medical certification for his absence on April 28, 1997. On or about May 13, 1997, Godwin submitted his FMLA application, including Dr. Cawthorn's medical certification, to Rheem. The medical certification confirmed the need for Godwin to be absent from work to transport his daughter to the hospital for surgery and to transport her to the doctor in subsequent weeks for routine follow-up visits. (Pl.'s Ex. 2–C, Certification of Health Care Provider.) The certification indicates that Godwin may need to take FMLA leave to assist his daughter with follow-up visits, specifically with "5–6 treatments; 1–2 visits per week." (Pl.'s Ex. 2–C, Certification of Health Care Provider.) Based on the medical certification and FMLA application, Rheem approved Godwin's FMLA leave for the 4 hours on April 28 to transport his daughter to the doctor, and the point previously assessed for that day was removed from Plaintiff Godwin's record. (Pl.'s Ex. 2–D.)

On May 14, 1997, Rheem terminated Godwin's employment for excessive absenteeism. Defendant contends that a final tally of Godwin's absentee points revealed that he accumulated 14 points. On May 19, 1997, Godwin obtained a hand-written note on Dr. Cawthon's office stationary that stated that Godwin's daughter was in need of "constant care" for the week following her surgery. (Pl.'s Ex. 2–E.) The letter states:

To Whom it May Concern:

Mrs. [sic] Godwin was seen in our office on 04–28–97 [Monday] for her pre-op work up. This took most of the day. She then had surgery on 04–29–97 [Tuesday]. She was in need of constant care each day for the remainder of the week (i.e. W–F, 4/30–5/5). It was necessary for someone to be with her and take care of her. She was in pain and discomfort from the surgery.

Thank You

(signed) Thomas H. Cawthon, M.D.

(Pl.'s Ex. 2–E.) [1]

On May 20, 1997, Gilliard issued Plaintiff a memorandum, entitled "Employer Response to Employee Request for Family or Medical Leave." (Pl.'s Ex. 2–D.) The memorandum states that Plaintiff informed Rheem that he would need medical leave, beginning April 28, 1997, and to continue until on or about April 29, 1997. (Pl.'s Ex. 2–D.) The memorandum further states that Godwin informed Rheem that he may need "intermittent leave for follow-up treatment during next three to four weeks." (Pl.'s Ex. 2–D.) The memorandum indicated that FMLA leave was approved for this date and purpose, and that Plaintiff would be required to furnish recertification relating to Jennifer's health condition, should her condition change and Plaintiff require additional time off from work. (Pl.'s Ex. 2–D.)

Subsequent to his termination, Godwin filed an appeal with Rheem's Peer Review and a Complaint with the United States Department of Labor, contending that he should have been granted FMLA time off for his daughter and also for the poison ivy.

## DISCUSSION

### A. *Nature of Plaintiff's Claims*

■ Godwin claims that he was wrongfully terminated due to Rheem's assessment of points for his absences from work on April 28, May 1, and May 5, 1997. The Parties

---

1. Defendant calls the authenticity of this letter into question. Subsequent to Plaintiff filing his Response in Opposition to Defendant's Motion for Summary Judgment, wherein he relies heavily upon this letter to substantiate his claim that he was absent from work in order to care for his daughter, Defendant filed an affidavit from Dr. Cawthon, wherein Dr. Cawthon states that he neither prepared nor signed the document, nor did he authorize anyone in his office to prepare or sign the document on his behalf and does not stand behind the statement in the document. (Affidavit of Dr. Cawthon, attached to Defendant's Motion for Leave to Supplement Motion for Summary Judgment.)

dispute what, precisely, Godwin claims to be the reasons he is entitled to FMLA leave for these absences. In opposing Defendant's Motion for Summary Judgment, Godwin contends that he should have been given medical leave for his absences April 28, May 1, and May 5 in order to take his daughter to the hospital for her sinus surgery, as well as to care for his daughter during her recuperation. Defendant contends that Plaintiff's Complaint only states a claim for FMLA leave for his daughter's surgery for his April 28, 1997 absence. Rheem contends that Plaintiff's Complaint maintains that Godwin is entitled to FMLA leave for the other two absences based on his "serious medical condition" of poison ivy.[2] Because Godwin has been credited with FMLA leave for April 28, 1997, Rheem argues that his claim for that date is moot. Furthermore, Rheem contends, not only has Godwin failed to meet the requirements under FMLA for his claims regarding poison ivy, but Godwin has also apparently conceded this poison ivy claim. Hence, Rheem argues, summary judgment is due to be granted on all of Plaintiff's claims.

The relevant portions of Plaintiff's Complaint state the following:

7. On or about April 28, 1997, Plaintiff notified Defendant of his need to take a leave of absence due to the fact that his daughter was having sinus surgery on April 29. As a result, Sherry Gilliard, Assistant Manager of Human Resources at Rheem's Montgomery facility, informed Plaintiff that such leave likely would qualify for protection under the FMLA and requested that plaintiff have his daughter's treating physician fill out a medical certification form to confirm this fact. Plaintiff returned the medical certification to Rheem and on Monday, April 28, 1997, Plaintiff took four hours of leave to take his daughter to the doctor.

8. On Thursday, May 1, 1997, plaintiff called in prior to his shift and stated that he would be absent from work due to the fact that he had poison ivy. On Tuesday, May 6, 1997, Plaintiff returned to work and provided Rheem with a doctor's excuse stating that he had been under the care of Dr. Michael Karst from May 2 until May 6. (Compl.¶¶ 7, 8.)

Plaintiff's deposition testimony adds to the confusion:

Q: Mr. Godwin, you've made a claim for family medical leave. Tell me exactly what days you are claiming you are entitled to for family medical leave.

A: The 28th, which I got. I worked Tuesday. The 30th and the 1st and if the plant was shut down Tuesday, there was no need in it.

Q: So your claim is based on two days, the 30th and the 1st, is that right, for your family medical leave, is that right?

A: Yeah.

Q: And what you are claiming your basis of the entitlement to family medical leave on the 30th and May 1st is?

A: I had to be with my daughter to take care of her.

Q: And that is the sole basis, it that right?

A: That's right,.

Q: No other reason?

A: No.

Q: Are you claiming family medical leave for any other days?

A: Just to be with my daughter.

Q: So you are not claiming family medical leave for poison ivy?

A: No.

(Godwin Dep. at 149–150.)

In his affidavit statement, Plaintiff attempts to reconcile this confusion. He states:

> sences on May 1 and May 5 due to poison ivy. Further, Rheem argues that in Godwin's appeal of his termination to Rheem's Peer Review Panel, he again only argued that he was 'absent on May 1 and May 5 due to poison ivy; his original Complaint with the Department of Labor similarly claimed absence on May 1 and May 5 for poison ivy.

2. Defendant argues that, until he began to defend against Defendant's Motion for Summary Judgment, Godwin has maintained that he was entitled to FMLA leave for May 1 and May 5 due to his case of poison ivy, only. Specifically, Rheem argues that Godwin's Complaint seeks FMLA for his absence to take his daughter to her surgery on April 28, yet seeks FMLA leave for his ab-

Please refer to paragraph 8 of my lawsuit complaint, when I mention I had poison ivy, what I meant to convey was that in addition to my legitimate FMLA reason for being off for my daughter's condition, I also needed to be off for poison ivy as well. Besides FMLA, Rheem recognizes other non-FMLA medical reasons for being off from work. Although it occurred to me (not being a lawyer) that poison ivy might be a second FMLA reason, I didn't rely on poison ivy, and didn't think I needed to, because of FMLA protection, due to my daughter's condition. My poison ivy statement was simply in the nature of an "oh, by the way ... I got this too."

(Godwin Aff. ¶ 5.) Thus, ultimately, in opposing Defendant's Motion, Plaintiff argues that he is entitled to FMLA leave for April 28, May 1 and May 5, 1997, for his absence from work to care for his daughter as she recuperated from her surgery.

The court agrees with Defendant that a literal reading of this Complaint indicates that Godwin claims FMLA leave was denied on April 28, 1997 for his absence to care for his daughter, and that FMLA leave was denied for his May 1 and May 5 absences due to poison ivy. However, the Federal Rules of Civil Procedure preclude a close, constrained reading of Plaintiff's Complaint. Rule 8(a)(2) of the Federal Rules of Civil Procedure mandates that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of Rule 8 "notice pleading" is to provide a "defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.,* 711 F.2d 989, 995 (11th Cir.1983) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The Eleventh Circuit has repeatedly emphasized the "liberality of the principles of notice pleading" governing federal procedure. *Brown v. Nichols,* 8 F.3d 770, 773 (11th Cir.1993). As Judge Wisdom of the Former Fifth Circuit stated:

Ancestor worship in the form of ritualistic pleadings has no more disciples. The time when the slip of a sergeant's quill pen could spell death for a plaintiff's cause of action is past. Under Federal Rules of Civil Procedure, a complaint is not an anagramatic exercise in which the pleader must find just exactly the prescribed combination of words and phrases. All that the Rules require is " 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds on which it rests...."

*Thompson v. Allstate Insur. Co.,* 476 F.2d 746, 749 (5th Cir.1973) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).[3]

Here, the court finds that Plaintiff's Complaint, while no doubt "inartfully pled," nevertheless provides Defendant Rheem with adequate notice concerning Plaintiff's FMLA claims, as evidenced by Rheem's ability to conduct discovery and provide summary judgment arguments on both Plaintiff's "poison ivy" theory and his "recuperating daughter" theory for all three dates in question. Hence, the court finds that Plaintiff's Complaint sufficiently states a claim for FMLA leave on April 28, May 1 and May 5, 1997, for purposes of both his own medical condition, poison ivy, as well as his need to care for his daughter. However, the court notes that Plaintiff's claim for April 28, 1997 is moot, as the record reflects that Plaintiff was given FMLA leave for this absence subsequent to his providing Rheem with the necessary documentation. (Pl.'s Ex. 13.) Summary judgment for Plaintiff's claim for April 28, 1997 is therefore due to be granted for Defendant.

The court will thus concentrate its discussion on whether the FMLA required Rheem to authorize FMLA leave on May 1, 1997 and May 5, 1997 for either poison ivy or for Plaintiff's need to care for his daughter as she recuperated from surgery.

**B.** *FMLA Requirements*

Congress enacted the Family Medical Leave Act of 1993 ("FMLA") to strike a

---

**3.** Decisions of the Former Fifth Circuit entered prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit. *Bonner v. City of* *Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

balance between protection of the American worker and the development of an effective workforce. 29 U.S.C. § 2601(b)(1). The FMLA guarantees non part-time employees who have been employed by a qualified employer[4] for more than a year the benefit of leave time for certain family and medical emergencies. *See* 29 U.S.C. § 2611(2).[5]

Section 2612 of Title 29 of the United States Code provides in relevant part that:

> an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12–month period for one or more of the following:
>
> > (C) In order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition. [or]
> >
> > (D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

29 U.S.C. § 2612(a)(1).

The FMLA defines a "serious health condition" as any physical or mental condition that involves inpatient care or continuing treatment by a health care provider.[6] 29 U.S.C. § 2611(11). The Regulations indicate that a serious health condition will at minimum include either: (1) a period of incapacity of more than three consecutive days together with subsequent multiple treatments or related periods of incapacity; (2) a period of incapacity due to pregnancy or for prenatal care; (3) a period of incapacity or treatment for incapacity due to a chronic serious health condition;[7] (4) a permanent or long-term period of incapacity due to ineffective treatment; or (5) a period of absence to receive or recover from multiple treatments by a health care provider for restorative surgery or a condition likely to result in incapacity if no treatment is received. 29 C.F.R. § 825.114(a)(2)(v); *see also Martyszenko v. Safeway, Inc.*, 120 F.3d 120, 123–24 (8th Cir. 1997).

■ At the outset, the court disposes of Plaintiff's claim under the FMLA for leave associated with poison ivy. Specifically, the court notes that Plaintiff's poison ivy does not qualify as a "serious medical condition" within the meaning of the FMLA. The record reflects that Godwin received treatment for the poison ivy on only one occasion, namely May 3, 1997. (Pl.'s Ex. 2–A.)[8] Plaintiff con-

---

4. Under the FMLA an employer is one who employs fifty or more employees for each working day during each of twenty or more calendar workweeks in the current or preceding calendar year. 29 C.F.R. § 825.104.

5. Here, the Parties do not contest that Godwin is a covered employee and Rheem a covered employer under the FMLA.

6. Under the applicable regulations, a "serious health condition requiring continuing treatment by a health provider" is further defined to include:

> (i) A period of incapacity (i.e. inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment thereof, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
> (A) Treatment two or more times by a health care provider . . .
> (B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.
> [or] . . . .

> (iii) Any period of incapacity or treatment for such incapacity due to a chronic serious health condition.

29 C.F.R. § 825.114 (emphasis added).

7. A "chronic serious health condition" is further defined in the regulations as one which:

> (A) Requires periodic visits for treatment by a health care provider, or by a nurse or physician's assistant under direct supervision of a health care provider;
> (B) Continues over an extended period of time (including recurring episodes of a single underlying condition); and
> (C) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.).

29 C.F.R. § 825.114 (emphasis added).

8. The record reflect a discrepancy concerning whether Plaintiff actually sought any treatment for poison ivy from Dr. Karst during his May 2, 1997 visit. Although Plaintiff testified that he sought treatment from Dr. Karst for both back pain and poison ivy (Godwin Dep. at 77–78), Dr. Karst testified that he never treated Plaintiff for poison ivy (Karst Dep. at 33), and that plaintiff never complained to him that he had poison ivy. (Karst Dep. at 8.) Rather, Karst testified that

cedes that he was only treated for the poison ivy on this one date, and that no medication was prescribed for his condition. (Godwin Dep. at 85, 91; *see also* Pl.'s Ex. 2–B (medical excuse from Dr. Karst's office with reason for care left blank).) Further, nothing in the record reflects that Plaintiff Godwin was incapacitated due to the poison ivy. Indeed, Plaintiff appears to concede that his poison ivy may not form the basis of his FMLA claim. (Pl.'s Ex. 2, Godwin Aff. at ¶ 5; Godwin Dep. at 149–50.) Accordingly, the court finds that summary judgment is due to be granted for Defendant as to any of Plaintiff's claims based on poison ivy.

Hence, the court turns to Plaintiff's remaining claim: Rheem's denial of FMLA leave on May 1 and May 5, 1997, for Plaintiff's absence to take care of his daughter subsequent to her having sinus surgery. The FMLA provides for "intermittent" leave, which allows an employee leave to attend appointments with a health provider for necessary treatment of a serious health condition. 29 U.S.C. § 2612; *see also* 29 C.F.R. § 825.117 (defining requirements for intermittent leave).

▇▇▇ Pursuant to 29 U.S.C. § 2615(a)(1), a plaintiff may bring a claim pursuant to the FMLA for an employer improperly interfering with his or her right to take medical leave. An employer who interferes with, restrains, or denies exercise of any right to leave under the FMLA is liable and is subject to a claim for compensatory damages and, unless the court finds the violation occurred in good faith and the employer had a reasonable belief it was not violating the FMLA, additional liquidated damages. 29 U.S.C. § 2615(a)(1); 29 U.S.C. § 2617(a)(1)(A); 29 C.F.R. § 825.220(c).[9] Several courts addressing the standard to be applied for such claims have found that Congress intended for FMLA leave protected by § 2615(a)(1) to be "strictly enforced" with any question of an employer's intent to violate the FMLA to be considered only when assessing damages. *Peters v. Community Action Committee, Inc. of Chambers–Talla-poosa–Coosa,* 977 F.Supp. 1428, 1433 (M.D.Ala.1997) (Thompson, J.); *Kaylor v. Fannin Regional Hospital, Inc.,* 946 F.Supp. 988, 996 (N.D.Ga.1996). The court construes Plaintiff's Complaint as asserting a claim under this provision of the FMLA.[10]

The FMLA requires that a plaintiff seeking intermittent leave under the FMLA fulfill certain statutory requirements. Namely, the FMLA requires that the employee provide the employer with notice and certification regarding the employee's reason for leave. 29 U.S.C. § 2613.[11] Where such leave is foreseeable based on planned medical treatment, the Act requires the employee to "provide the employer with not less than 30 days' notice, before the leave is to begin, of the employee's intention to take leave" under the FMLA. 29 U.S.C. § 2612(e)(2)(B). The Act itself is silent regarding the notice which an employee must provide to his or her employer when the need is not foreseeable. The regulations, however, provide for unforeseeable circumstances, as well:

Plaintiff visited him for back pain. (Karst Dep. at 9.) Even if Plaintiff did initially see Dr. Karst for poison ivy, he nevertheless only received treatment on one occasion, May 3, 1997, from Pri–Med.

9. Punitive and mental distress damages are not allowed under the FMLA. *See McAnnally v. Wyn South Molded Products, Inc.,* 912 F.Supp. 512 (N.D.Ala.1996).

10. Plaintiff's Complaint fails to state under which FMLA provision Plaintiff brings his claims. Although Plaintiff states he brings this action due to Rheem's "discrimination" against him, (Compl.¶ 1), the substance of his Complaint concerns Rheem's failure to provide him with unpaid medical leave for medical reasons and for the care of his daughter's serious health condi-

tion. Nowhere in Plaintiff's Memorandum Brief in opposition to Defendant's Motion for Summary Judgment does Plaintiff cite the specific FMLA provision under which he seeks relief. Moreover, in his Memorandum Brief, Plaintiff fails to discuss the analytical framework courts follow for discrimination and retaliation claims brought pursuant to 29 U.S.C. § 2615(a)(2). See infra, note 13. Hence, the court construes Plaintiff's Complaint to assert claims pursuant to 29 U.S.C. § 2615(a)(1).

11. When the notice and certification requirements are met, however, the FMLA mandates that the employee be granted full restoration of that employee's position (or an equivalent position), and to restoration of "benefits, pay, and other terms and conditions of employment," upon return from leave. 29 U.S.C. § 2614(a).

(a) When the approximate timing of the need for leave is not foreseeable, and employee should give notice to the employer of the need for FMLA leave as soon as is practicable under the facts and circumstances of the particular case. It is expected that an employee will give notice to the employer within no more than one or two working days of learning of the need for leave, except in extraordinary circumstances where such notice is not feasible. In the case of a medical emergency requiring leave because of an employees's own serious health condition or to care for a family member with a serious health condition, written advance notice pursuant to an employer's internal rules and procedures may not be required when FMLA leave is involved.

(b) The employee should provide notice to the employer either in person or by telephone, telegraph, facsimile ("fax") machine or other electronic means..... The employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed. The employer will be expected to obtain any additional required information through informal means. The employee or spokesperson will be expected to provide more information when it can readily be accomplished as a practical matter, taking into consideration the exigencies of the situation.

29 C.F.R. § 825.303 (1997).

In *Gay v. Gilman Paper Co.*, 125 F.3d 1432 (11th Cir.1997), the Eleventh Circuit addressed what constitutes sufficient notice in the case of unforeseen FMLA leave. In that case, the plaintiff entered a hospital to receive treatment for a nervous breakdown. *Gay*, 125 F.3d. at 1433. The plaintiff's husband called the plaintiff's supervisor and told her that his wife was in the hospital, but did not inform the supervisor that his wife had suffered a nervous breakdown; rather, he told her that his wife was having some tests run. *Gay*, 125 F.3d at 1433. During his deposition, the husband admitted that he, in fact, lied to the supervisor about his wife's whereabouts and instructed his sons not to give the employer any information about his wife's condition or location. *Gay*, 125 F.3d at 1433. The plaintiff made no further at-

tempts to notify her employer of her condition or absence from work during the week of her absence, and she was later fired for failing to report or explain her absences. *Gay*, 125 F.3d at 1434. In affirming the district court's entry of summary judgment for the employer, the Eleventh Circuit held that the plaintiff failed to provide her employer with sufficient information to put her employer on notice that her absence was potentially FMLA qualifying. *Gay*, 125 F.3d at 1436. The court held that, because the husband deliberately withheld information concerning the true nature of his wife's condition and instructed his sons to do the same, the employer could not reasonably be expected to conclude that the plaintiff's absence might have qualified for treatment under the FMLA, and thus the burden to request further information never shifted to the employer. *Gay*, 125 F.3d at 125.

In sum, the court held that "an employer is entitled to expect that the employee will be cognizant of her own job responsibilities as well as the operation of the employer and will give notice as soon as practicable. When notice of a possible serious medical condition is deliberately withheld and false information is given, it cannot be said that an employee has been terminated in violation of the FMLA." *Gay*, 125 F.3d at 1436.

■ Here, Defendant Rheem contends that Plaintiff has failed to satisfy the requirements for taking FMLA leave in order to care for his recuperating daughter. Specifically, Rheem argues that Plaintiff failed to provide Rheem with the necessary notice that he needed FMLA leave to care for his recuperating daughter. Defendant contends that Plaintiff never applied for FMLA leave to care for his recuperating daughter, never told Rheem's human resources department that he was entitled to FMLA for that reason, and never told the Department of Labor that this was the reason he took the absences for which he claims he was denied FMLA leave. (Def.'s Mem. at 17, 30.)

The court finds that, given Plaintiff's allegations that he was given physical custody of his daughter at the last minute, his need to take an absence from work in order to care for her after her sinus surgery was an "un-

foreseeable" circumstance. Hence, "as soon as was practicable," Godwin needed only to convey to Rheem sufficient information to put the employer on notice that his absence was potentially FMLA-qualifying. 29 C.F.R. § 825.303; *Gay*, 125 F.3d at 1436. Thus, the court must determine whether Godwin, in fact, did provide Rheem with the adequate notice that he was absent from work May 1 and May 5 in order to care for his recuperating daughter.

■ Defendant contends that Godwin wholly failed to inform Rheem that he needed time off, subsequent to April 28, 1997, in order to care for his daughter. Barney Wright, Godwin's supervisor, stated that Godwin advised him that he was going to take off the four hours of his April 28, 1997 shift in order to get a full night's sleep prior to taking his daughter to the hospital for her surgery. (Revised Aff. of Dolphus (Barney) Wright ¶ 4.) However, Wright states that this was the last thing that Godwin ever said to him or anyone else in his presence, about needing any time off because of his daughter's surgery. (*Id.*) Wright states that on May 1, 1997, Godwin again missed work, but showed up at the end of the shift to pick up his pay check. (Wright Aff. ¶ 6.) At that time, Godwin showed Wright the insides of his forearms indicating what appeared to be poison ivy, yet never said anything about his daughter or needing to stay home with her. (Wright Aff. ¶ 6.) Wright states that, upon his return to work on May 6, 1997, Godwin never said anything at that time, or at any time, to him concerning his daughter staying with him or that she was recuperating from surgery or that he had had to miss work to stay home with her. (Wright.Aff. ¶ 10; Wright Dep. at 76–77.)

Further, Defendant offers the affidavit of Willie Jackson, the lead man on the day shift. Jackson states that, on Monday, May 5, 1997, he took a phone call from Godwin who reported that he would not be coming into work on that day because of poison ivy. (Jackson Aff. ¶ 1.) Jackson states that he reported this information to John Lonza, the day shift supervisor. (Jackson Aff. ¶ 1.)

John Lonza, the day shift supervisor in the Godwin's department, states that he took a message from Godwin that he would be missing work on May 1, 1997, because he had poison ivy. (Lonza Aff. ¶ 3.) On May 5, 1997, Lonza states that Godwin called in to state that he would not be into work because of his poison ivy. (Lonza Aff. ¶ 4.) Lonza states that Godwin never told him during these phone calls, or at any time at work, about having to stay home with his daughter because she was recuperating from surgery. (Lonza Aff. ¶ 5.) Finally, Gilliard states that, while Godwin informed her of the need to take April 28, 1997 in order to get a good night of sleep prior to taking his daughter in for surgery on April 29, Godwin never suggested to her that he was entitled to any additional FMLA leave for the time spent with her daughter after her surgery. (Aff., Sherry Gilliard, Def.'s Ex. 8 ¶ 3.)

Godwin contends that he did, in fact, provide Rheem with notice that he needed to miss work in order to be with his daughter as she recuperated from her surgery. He states that he told John Lonza that he might have to take off the Tuesday through Friday (April 29 through May 2, 1997) following his daughter's surgery in order to care for his daughter. (Godwin Dep. at 50; 63–64.) Godwin further states that on Thursday, May 1, 1997, he called work and spoke with Barney Wright, at which time he told Wright both that he had to be with his daughter and told him that he had poison ivy. (Godwin Dep. at 67.)

In his affidavit, Godwin states that he did, in fact, inform Gilliard that he would need to be absent from work in order to care for his recuperating daughter:

On or about April 28, 1997, I ... told Ms. Gilliard that I had suddenly learned that I needed to be off for at least a week, or from April 29, 1997, to May 5, 1997 not only to be with Jennifer after her surgery but to be with her during recovery. I didn't know that Jennifer needed surgery until just before she came to be with me. If Ms. Gilliard denies this, she has either forgotten, or is not telling the truth. In response to my request, however, Ms. Gilliard gave me on April 29, 1997 a FMLA application at the Human Resources Department. Moreover, Ms. Gilliard told me that she thought my request would qualify for protection under the FMLA.

(Godwin Aff. ¶ 6.) Godwin states that he told Ms. Gilliard that he would need one week off, until May 5, 1997, to stay with his daughter. (Godwin Aff. ¶ 10.) In his affidavit, Godwin states that he relied upon oral assurances and a written memorandum, which he received from Gilliard on May 20, 1997, that he would be excused under the FMLA through May 5, 1997. (Godwin Aff. at ¶ 14.)[12] He further states that he telephoned Rheem on May 1, 1997 and told John Lonza that he needed to be out from work to watch his daughter during her recovery. (Aff. at ¶ 7.) He states that he advised Barney Wright, the night shift supervisor, that he could not find anyone to watch his daughter and he was therefore going to have to take care of her. Godwin further states that, when he arrived at work to pick up his paycheck on May 1, 1997, he informed Wright about his daughter's surgery recovery and the need to take care of her. (Godwin Aff. ¶ 8.) However, in his affidavit, Plaintiff states that on Monday, May 5, 1997, he called into work and said he couldn't come in because of poison ivy. (Godwin Aff. at 253.)

On May 13, 1997, Godwin supplied Rheem with a medical certification form which confirmed his need to be absent in order to transport his daughter for her sinus surgery on April 29, 1997 as well as transport in her in future weeks for routine follow-up visits with her doctor. (Pl.'s Ex. 2–C, Certification of Health Care Provider.) Even viewing this Certification in a light most favorable to Plaintiff, the court finds that the Certification provided to Rheem on May 13, 1997, did not cover Plaintiff's May 1, 1997 and May 5, 1997 absences to care for his daughter at home as she recuperated from her surgery. (See Pl.'s Ex. 2–C.) It was not until May 19, 1997, that Plaintiff provided Rheem with a statement from his daughter's doctor that he needed to care for his daughter during the week following her surgery by providing more than transportation for a weekly follow-up doctor's visit. (Pl.'s Ex. 2–E.) On that date, Godwin presented Ms. Gilliard with a letter, allegedly signed by Dr. Cawthorn, but the authenticity of which is disputed, confirming the need for him to "provide constant care" for his daughter during the week following her surgery. (Pl.'s Ex. 2–E.)

The court finds that, even viewing the facts in a light most favorable to Plaintiff, Godwin failed to provide adequate notice to Rheem that he was absent from work on May 5, 1997 in order to stay at home with his recuperating daughter. Rather, the court finds that Plaintiff told Rheem that his absence on Monday, May 5, 1997, was due to his poison ivy. Plaintiff testified that he sought a medical excuse from Dr. Karst's office for his poison ivy for his May 5, 1997 absence. (Godwin Dep. 246, 247.) Further, Godwin states in his deposition that he called in to work on Monday to tell his employer that he could not come in because of poison ivy. (Godwin Dep. at 253.) Other than Godwin's affidavit statement concerning statements he allegedly made to Ms. Gilliard, there is nothing in the record to indicate that he informed Rheem that his absence on May 5, 1997, was due to his need to care for his daughter.[13] The court finds that this affidavit statement, standing alone, fails to create a genuine issue of fact as to whether Plaintiff informed Rheem that his absence on May 5, 1997, was due to the need to care for his recuperating daughter. See Van T. Junkins & Assoc., Inc. v. U.S. Industries, 736 F.2d 656, 657 (11th Cir.1984) ("When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affi-

12. The court notes that Plaintiff Godwin could not, in fact, have relied upon this "written assurance" when he took said leave, as he was not furnished with the "assurance" until May 20, 1997.

13. The court finds that the May 20, 1997 Memorandum issued by Gilliard to Godwin approving his FMLA leave for April 28, 1997 and "intermittent leave" did not indicate an approval for FMLA leave for May 5, 1997. Nor did said Memorandum indicate that Plaintiff had informed Gilliard of the need to be absent on that date in order to care for his daughter. Rather, the memorandum was issued in response to the Certification of Health Care Provider Plaintiff submitted on or about May 13, 1997. This medical certification confirmed the need for Godwin to be absent from work to transport his daughter to the hospital for surgery and to transport her to the doctor is subsequent weeks for routine follow-up visits, up to six times. (Pl.'s Ex. 2–C.) The certification did not contemplate Plaintiff needing to stay at home with his daughter, at her bedside, to assist her as she recuperated from the surgery. (See Pl.'s Ex. 2–C.)

davit that merely contradicts, without explanation, previously given clear testimony.").

■ The court notes Plaintiff's argument that Dr. Cawthorn's letter, dated May 19, 1997, satisfies the statutory requirements for medical certification for his absence on May 5, 1997. Specifically, Plaintiff argues that he was well-within the statutory period of fifteen days for providing Defendant Rheems with medical certification for Godwin's absence on May 5, 1997, and that, if Rheem doubted the validity of Dr. Cawthorn's letter, the statute places the burden on Rheem to verify the certification. *See* 29 U.S.C. § 2613. However, in the instant case, the court finds that the statute's specifications concerning medical certification were never triggered, as Plaintiff failed to provide Rheem with the requisite notice of request for the potentially qualifying FMLA leave. *See* 29 C.F.R. § 825.305(a).

Hence, the court finds that summary judgment for Defendant on Plaintiff's claims concerning FMLA leave for May 5, 1997, is due to be granted. *Compare Gay*, 125 F.3d at 1436 (plaintiff provided insufficient notice to employer to trigger FMLA protections), *and Seaman v. C.S.P.H., Inc.*, 1997 WL 538751, * 19 (W.D.Tex.1997) (granting summary judgment for employer where employee fails to provide employer with sufficient information to establish an FMLA qualifying reason for the needed leave), *with Brannon v. OshKosh B'Gosh Inc.*, 897 F.Supp. 1028, 1038

(M.D.Tenn.1995) (plaintiff provided employer with sufficient notice of daughter's illness by calling in to employer with the true reason for her absence each morning of her absence).

■ Thus, Plaintiff's remaining claim for Rheem's denial of FMLA leave centers on May 1, 1997. Viewing the record in a light most favorable to Plaintiff, the court finds that there exists a genuine issue of fact as to whether Godwin provided Rheem with sufficient notice that he was absent on May 1, 1997, in order to care for his daughter as she recuperated from her surgery. (See Godwin Dep. at 50, 63–64, 67; Godwin Aff. ¶¶ 7, 8.) The court further finds that there is a genuine issue of fact as to whether Plaintiff provided Rheem with valid medical certification for his absence on that date. Accordingly, the court finds that summary judgment on Plaintiff's May 1, 1997 claim is due to be denied.[14]

Furthermore, the court finds that Plaintiff's claims for punitive damages and mental distress damages are due to be stricken. *See McAnnally v. Wyn South Molded Products*, 912 F.Supp. 512, 513 (N.D.Ala.1996) (FMLA does not provide for punitive damages, and mental distress is not included in "other compensation" recoverable under the FMLA).

### *ORDER*

Based on the foregoing, it is CONSIDERED and ORDERED that Defendant's

---

**14.** The court notes Defendant's argument that Plaintiff Godwin would have been terminated from his employment, despite his accumulation of two points on May 1, 1997 and May 5, 1997. This fact would be relevant, had Plaintiff asserted a claim pursuant 29 U.S.C. § 2615(a)(2), which provides a cause of action against employers who discriminate against any employee who attempts to exercise his rights under the FMLA. 29 U.S.C. § 2615(a)(2). Courts typically analyze such claims pursuant to the framework employed in Title VII actions. *See, e.g., Morgan v. Hilti*, 108 F.3d 1319, 1323 (10th Cir.1997); *Munizza v. State Farm Mutual Automobile Insurance Company*, 103 F.3d 139 (9th Cir.1996); *Peters*, 977 F.Supp. at 1434; *Dillon v. Carlton*, 977 F.Supp. 1155, 1158 n. 8 (M.D.Fla.1997); *Beal v. Rubbermaid Commercial Products, Inc.*, 972 F.Supp. 1216, 1229 (S.D.Iowa 1997); *Dumoulin v. Formica*, 968 F.Supp. 68, 71 (N.D.N.Y.1997); *Sidaris v. Runyon*, 967 F.Supp. 1260, 1271 (M.D.Ala. 1997); *Petsche v. Home Federal Savings Bank, Northern Ohio*, 952 F.Supp. 536, 537 (N.D.Ohio

1997); *Kaylor*, 946 F.Supp. at 999 (N.D.Ga. 1996). Under that analysis, Defendant Rheem's alleged legitimate reason for terminating Plaintiff would be relevant. *See e.g., Peters*, 977 F.Supp. at 1434. However, here, the court construes Plaintiff's Complaint to state a claim for Defendant Rheem's alleged interference with his entitlements under the FMLA, pursuant to 29 U.S.C. § 2615(a)(1). As stated, *supra*, the employer's intent is immaterial to state such a claim. The court specifically makes no finding with respect to the validity of any possible claim brought pursuant to 29 U.S.C. § 2615(a)(2). Hence, the court notes that whether Plaintiff Godwin would have been terminated for excessive absenteeism, regardless of the point accumulated for the May 1, 1997 absence, is irrelevant for purposes of determining *liability* under 29 U.S.C. § 2615(a)(1). The court recognizes that such an argument may become relevant upon inquiry of what, if any, damages Plaintiff sustained in this action.

Motion for Summary Judgment be and the same is hereby GRANTED in part and DENIED in part, as follows:

(1) Defendant's Motion for Summary Judgment with respect to Plaintiff's claims concerning his absence on April 28, 1997, be and the same is hereby GRANTED;

(2) Defendant's Motion for Summary Judgment with respect to Plaintiff's claims concerning his absence on May 1, 1997, in order to take care of his daughter as she recuperated from surgery be and the same is hereby DENIED;

(3) Defendant's Motion for Summary Judgment with respect to Plaintiff's claims concerning his absence on May 1, 1997, due to his poison ivy be and the same is hereby GRANTED; and

(4) Defendant's Motion for Summary Judgment with respect to any of Plaintiff's claims for his absence on May 5, 1997 be and the same is hereby GRANTED.

It is further CONSIDERED and ORDERED that Plaintiff's claims for punitive damages and mental anguish damages be and the same are hereby STRICKEN.