Lori A. SWANSON, Plaintiff,

v.

CIVIL AIR PATROL, Paul J. Albano,
Sr., and D.J. Bartlett,
Defendants.

Douglas G. Isaacson, Plaintiff,

v.

Civil Air Patrol, Defendant.

Nos. Civ.A. 98–A–223–N,
Civ.A. 98–A–613–N.

United States District Court,
M.D. Alabama,
Northern Division.

Dec. 22, 1998.

Order Denying Reconsideration
Jan. 7, 1999.

Joseph B. Lewis—Montgomery, AL, for plaintiff.

David J. Middlebrooks; Brent L. Crumpton; Kimberly K. Boone—Birmingham, AL, for defendant.

## MEMORANDUM OPINION

ALBRITTON, Chief Judge.

### I. INTRODUCTION

These actions are before the court on a Motion for Summary Judgment filed on October 22, 1998 by Defendants Civil Air Patrol ("CAP"), Paul J. Albano ("Albano") and D.J. Bartlett ("Bartlett") (collectively, "Defendants") as to Plaintiff Swanson's claims (Doc. # 58) and a Motion for Summary Judgment, filed on the same date by CAP as to Plaintiff Isaacson's claims (Doc. # 60). Defendants' Motion for Summary Judgment as to Plaintiff Swanson's state law conspiracy claims, filed November 17, 1998 (Doc. # 77) is also before the court. In this Memorandum Opinion, the court also considers the Plaintiffs' consolidated Response to Motion for Summary Judgment, filed Nov. 16, 1998 (Doc. # 76), Defendants' Reply to Plaintiff Swanson's Response to Their Motion for Summary Judgment (Doc. # 83) and Defendant's (CAP's) Reply to Plaintiff Isaacson's Response to Defendant's Motion for Summary Judgment (Doc. # 82), both filed November 23, 1998.

Also before the court are Defendants' Motion to Strike Portions of the Affidavits of Brian M. Campbell and Hugh White (Doc. # 87) and Defendants' Motion to Supplement Their Joint Evidentiary Submission (Doc. # 88), both filed December 7, 1998.[1]

Plaintiff Lori A. Swanson ("Swanson") filed her Complaint on March 2, 1998 and her First Amended Complaint on March 9, 1998. In her First Amended Complaint, Swanson alleges that Defendants violated certain rights guaranteed under the United States Constitution and rights established by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., as amended in 1991 ("Title VII"), and 42 U.S.C. § 1985. Consequently, this court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. These federal law claims specifically include: discrimination on the basis of sex (Count I), hostile environment sexual harassment (Count II), and retaliation (Count III), all under Title VII, as well as conspiracy under 42 U.S.C. § 1985 (Count VI).

Swanson also states claims arising under Alabama law which are based on the same incidents addressed by her federal law claims. This court therefore has supplemental jurisdiction over Swanson's state law claims pursuant to 28 U.S.C. § 1367. These state law claims include: invasion of privacy (Count IV), false arrest and false imprisonment (Count V), and conspiracy under the common law of Alabama (Count VII).

Plaintiff Douglas G. Isaacson ("Isaacson") filed his Complaint on May 28, 1998. In his Complaint, Isaacson alleges that CAP retaliated against him for engaging in protected activities, in violation of Title VII. While the Complaint states two counts, the first for "Discrimination" and the second for "Retaliation," both counts complain of acts of retaliation, and, therefore, both counts are addressed concurrently. This court has jurisdiction over Isaacson's claims pursuant to 28 U.S.C. § 1331.

On July 6, 1998, this court entered an Order of Consolidation, consolidating Swanson's case, Civil Action No. 98–A–223–N, with Douglas G. Isaacson's related case against CAP, Civil Action No. 98–A–613–N, for discovery and for trial. Defendants moved for summary judgment as to Plaintiff Swanson's federal and state law conspiracy claims, and this court granted summary judgment on Plaintiff Swanson's conspiracy claim under 42 U.S.C. § 1985.[2]

---

1. After consideration of these Motions and the materials submitted in support thereof, the court finds that none of the materials at issue are necessary to the resolution of the other Motions addressed in this Memorandum Opinion. Therefore, both motions are due to be denied as moot.

2. The court originally granted summary judgment as to both of Plaintiff Swanson's conspiracy claims. *See* Order of October 21, 1998. Upon a Motion to Reconsider, however, the court determined that the grant of summary judgment as to Swanson's state law conspiracy claim had been improper. *See* Order of November 3, 1998. Swanson's state

Defendants' current Motion for Summary Judgment is directed at Swanson's remaining Counts, and CAP's Motion for Summary Judgment is directed at both of Isaacson's Counts.

For the reasons discussed below, Defendants' current Motion for Summary Judgment, as to Swanson's claims, is due to be granted in part and denied in part, and CAP's Motion for Summary Judgment, as to Isaacson's claims, is due to be granted in part and denied in part.

## II. *SUMMARY JUDGMENT STANDARD*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the district court that the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–24, 106 S.Ct. 2548.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, 'designate' specific facts showing that there is a genuine issue for trial." *Id.*

law conspiracy claim is, therefore, presently

at 324, 106 S.Ct. 2548. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On the other hand, the evidence of the non-movant must be believed and all justifiable inferences must be drawn in its favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

## III. *FACTS*

Swanson and Isaacson allege the following facts:

Swanson began working for CAP in July of 1996 as Chief of Program Management. In June of 1997, Swanson became Chief of Curriculum Development in CAP's Cadet Program Directorate. On January 15, 1998, Swanson's employment with CAP was terminated. During Swanson's employment at CAP, Defendant Albano was CAP's Executive Director, and Defendant Bartlett was CAP's Human Resources Manager. Plaintiff Isaacson was Swanson's immediate supervisor throughout her employment with CAP. *See* Swanson Depo. at 616, ll. 12–20. Swanson lived at Isaacson's residence with his family during part of her employment with CAP. *See* Swanson Depo. at 760, l. 21 through 761, l. 5.

Plaintiff Swanson complains that she was subjected to disparate treatment on the basis of sex, hostile environment sexual harassment, and retaliation during her employment with CAP. Swanson alleges in her first EEOC Complaint, filed January 15, 1998, that Albano made sexual advances toward her, and upon her rejection

before the court.

of these advances, he harassed and intimidated her. *See* Swanson Depo. at Ex. 29. She also contends that Albano took actions toward her and other women at CAP which created a hostile work environment. *Id.* In her second EEOC Complaint, filed January 22, 1998, Swanson contends that Albano retaliated against her after she filed a grievance against him with CAP on or about December 10, 1997 and filed her first EEOC charge. *See* Swanson Depo. at Ex. 32. Finally, Swanson contends that throughout her employment with CAP, she was treated unfairly because she was female. *See* Swanson Depo. at 565, l. 1 through 566, l. 22.

After she was terminated, Swanson continued on at CAP as a volunteer. Swanson had been a volunteer for the organization since May of 1979 and continued in that capacity even during her tenure as a paid employee. While she was working as a CAP volunteer on February 16, 1998, Swanson alleges that Albano and/or Bartlett and/or another CAP employee, Bobbie Tourville, entered into a conspiracy to file a false complaint against Swanson with the Maxwell Air Force Base Security Police and ordered that she be arrested. Defendants, however, contend that she was detained by the air force base[3] security police because of a problem with a parking permit sticker on her car.

Isaacson, the other Plaintiff in this case, worked for CAP from 1992 until his termination on May 27, 1998. *See* Isaacson Depo. at 276, ll. 17–22. On January 15, 1998, Isaacson accompanied Swanson to Birmingham to assist with her filing of an EEOC charge against Albano. Upon their return to CAP, they learned that Swanson's employment had been terminated, and Isaacson found that he did not have access to his computer because his password had been deleted. Isaacson filed his own charge with the EEOC on January 23, 1998, alleging that this January 15, 1998 "lock-down" of his computer was an act of retaliation for his support of Swanson's discrimination complaint. *See* Isaacson

Depo. at Ex. 2. Isaacson now contends that he suffered two acts of retaliation: the "lock-down" incident and the termination of his employment with CAP on May 27, 1998.

## IV. *DISCUSSION*

### A. *Title VII*

Under Title VII of the Civil Rights Act of 1964, it is an unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex...." 42 U.S.C. § 2000e–2(a)(1). Plaintiff Swanson claims that she was subjected to disparate treatment, hostile environment sexual harassment, and retaliation in violation of Title VII. Plaintiff Isaacson claims that he was fired in retaliation for protected activities, also in violation of Title VII.

A plaintiff bringing a claim under Title VII must establish that the employer's actions were the result of intentional discrimination. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). A Title VII plaintiff may prove discrimination with direct evidence of discrimination or with circumstantial evidence which creates an inference of discrimination. Where a plaintiff seeks to prove a claim by use of circumstantial evidence of the employer's intent, a framework of shifting burdens of proof applies. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). This framework applies to claims of disparate treatment and retaliation where a plaintiff, like Swanson in the present case, does not have direct evidence of illegal discrimination. *See Thompkins v. Morris Brown College,* 752 F.2d 558 (11th Cir.1985).

**3.** CAP's Headquarters is located on the grounds of Maxwell Air Force Base.

▮▮ Under this framework, the plaintiff must first establish a prima facie case of discrimination. *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Once the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *Id.* This is a burden of production, not persuasion. *Burdine*, 450 U.S. at 254–55, 101 S.Ct. 1089. If the employer provides a legitimate, nondiscriminatory reason for its actions, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the reasons offered by the employer were a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. 1817. To avoid summary judgment, the "evidence must be sufficient to create a genuine factual issue with respect to the truthfulness of the defendant's proffered explanation." *Howard v. BP Oil Co.*, 32 F.3d 520, 525 (11th Cir.1994).

### 1. *Disparate Treatment (Count I—Swanson)*

While Swanson has not titled the claims included in this count as "disparate treatment," the court construes Count I, "discrimination on the basis of sex" as a claim for disparate treatment on the basis of sex. In this count, Swanson alleges that, because of her gender, she was subjected to disparate treatment in several aspects of the terms and conditions of her employment. Swanson's allegations of disparate treatment are based upon claims of unequal pay, diminution of her job responsibilities, discriminatory counseling, and miscellaneous other complaints about her treatment as a CAP employee. In order to meet the prima facie case requirement, Swanson has to establish that: (1) she is a member of a group protected by Title VII; (2) she was qualified for the position; (3) she suffered an adverse effect on her employment; and (4) she suffered from differential application of work or disciplinary rules. *See Armstrong v. Flowers Hosp., Inc.*, 33 F.3d 1308, 1314 (11th Cir.1994).

The court addresses each of Swanson's allegations below.

#### a. *Title VII Unequal Pay Claims*

▮▮ At the outset, Defendants offer two procedural defenses to Swanson's Title VII unequal pay claims. Defendants allege that Swanson's unequal pay claims are barred as a matter of law because neither of Swanson's EEOC charges even mentions the issue of pay and because these claims are time-barred. As to the first of these procedural defenses, Defendants note that the scope of a judicial complaint under Title VII is limited to the acts of discrimination contained in the EEOC charge or claims "like or related" to the claims raised in the charge. *See Coon v. Georgia Pacific Corp.*, 829 F.2d 1563, 1569 (11th Cir.1987). The Eleventh Circuit has explained this standard as limiting the scope of a plaintiff's judicial complaint to "the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 589 n. 8 (11th Cir.1994), relying on *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir.1970).

The court begins its analysis with an examination of Swanson's EEOC charges. Neither charge makes an allegation regarding pay nor mentions pay. Rather, the first charge specifically states claims for hostile environment sexual harassment and retaliation, while the second charge specifically states a claim for retaliation. The questions, then, are whether the unequal pay allegations are like or related to Swanson's allegations of hostile environment sexual harassment and retaliation, and/or whether an EEOC investigation of these charges would have reasonably been expected to uncover equal pay violations.

This court cannot answer either question in the affirmative. Neither of Swanson's charges even mentions disparate treatment on the basis of gender, except in the form of hostile environment sexual harassment, let alone unequal pay on the basis of gender. While unequal pay might be con-

sidered as some evidence of an employment environment that discriminates against women on the basis of sex, nothing in either EEOC charge even alludes to such an allegation. In the absence of the mention of disparate treatment or unequal pay in Swanson's charges, this court cannot find that claims of unequal pay on the basis of gender are like or related to claims of hostile environment sexual harassment or retaliation or that the EEOC would have been reasonably expected to uncover equal pay violations in its investigation of Swanson's other claims.

Given these facts and the rules in *Coon* and *Mulhall,* this court finds that Swanson's unequal pay claims are barred as a matter of law. Defendants' Motion for Summary Judgment is therefore due to be granted insofar as it relates to Swanson's claims of disparate treatment by unequal pay on the basis of gender.

**b. *Diminution of Job Responsibilities***

█ Swanson also claims she was treated unfairly on the basis of gender by Defendants' diminution of her job responsibilities. Specifically, Swanson appears to contend that she was relieved of her International Air Cadet Exchange ("IACE") duties because she is female. Defendants note that Swanson has produced no evidence to show that this action occurred because of her membership in a protected group. Nor has she shown that a similarly-situated male was treated differently, i.e., that a man with a similar position at CAP was not relieved of job responsibilities. If the plaintiff fails to identify similarly situated, non-minority employees who were treated more favorably, her case must fail. *See Jones v. Bessemer Carraway Medical Ctr.,* 137 F.3d 1306, 1311 (11th Cir.1998), *modified in non-relevant part on denial of reh'g,* 151 F.3d 1321 (11th Cir.1998). This court therefore finds that Swanson has failed to prove a prima facie case of disparate treatment regarding the diminution of her job responsibilities. Defendants' Motion for Summary Judgment regarding Swanson's disparate impact claim based on the diminution of job

responsibilities is therefore due to be granted.

**c. *Counseling***

█ Plaintiff claims that she received job written counselings or reprimands unfairly on the basis of gender. *See* Swanson Depo. at 566, ll. 3–9. These claims are based on three incidents: (1) a written counseling Swanson received following an altercation between Swanson and her co-employee Chris Shaw ("Shaw"); (2) a written counseling that both Swanson and Isaacson received regarding an inappropriate telephone message Swanson left for Air Force Lieutenant Colonel Miller; and (3) a written counseling related to Swanson's performance at IACE. *See* Swanson Depo. at 1191, ll. 5–7 and Exs. 37 through 39; Isaacson Depo. at Ex. 26. Defendants contend, however, that Swanson cannot state a claim of disparate treatment because of gender for any of these written counselings.

The court finds that Swanson fails to state a prima facie case regarding the first two written counselings because uncontroverted evidence in the record shows that similarly situated males were treated identically to Swanson. The first counseling of which Swanson complains was issued after an altercation between Swanson and Shaw. In that written counseling, Albano warned Swanson about her use of inappropriate language and ordered Swanson to write an apology letter to Shaw. *See* Swanson Depo. at Ex. 39.

Defendants assert that Swanson cannot show that she was treated differently from a similarly situated male because Shaw, who is male, experienced the same adverse employment action as a result of the altercation. Shaw received a written counseling for his use of inappropriate language and was ordered to write an apology letter to Swanson. *See* Swanson Depo. at 1196, l. 16 through 1197, l. 1 and Exs. 40–41. In fact, Shaw's letter of counseling was issued on December 2, 1997, and Swanson's was not issued until December 17, 1997, after Shaw filed a complaint alleging unfair treatment because he had been reprimand-

ed while Shaw had not. *See id.* at Exs. 39 and 40. Given these facts, Swanson cannot show that she was treated differently from a similarly-situated male regarding the first written counseling.

The second written counseling of which Swanson complains also fails to establish disparate treatment on the basis of gender because a similarly situated male was treated identically. The incident which formed the basis for this written counseling was Swanson' leaving of a telephone message for Air Force Lieutenant Colonel Douglas Miller ("Miller") which Albano described as inappropriate, unprofessional, and harassing. *See* Swanson Depo. at Ex. 37. Swanson was counseled and ordered to write a letter of apology to Miller. *Id.* Isaacson, Swanson's supervisor, who is male, was present with Swanson when she left the telephone message at issue. *See* Isaacson Depo. at Ex. 37. Isaacson was also counseled and ordered to write a letter of apology to Miller. *Id.* Given these facts, Swanson has failed to identify a similarly situated, male employee who was treated more favorably, and her claim regarding this allegation must fail. *See Jones,* 137 F.3d at 1311.

While the court has no evidence that similarly-situated males were treated identically to Swanson in the issuance of the third written counseling, the court finds that Swanson has failed to show that any similarly-situated male was treated differently from her. This third written counseling was issued as a result of Swanson's conduct at the 1997 IACE program. *See* Swanson Depo. at Ex. 38. The gist of this written counseling is that Swanson behaved unprofessionally, demonstrated poor communication skills, and did not satisfactorily execute all of her job duties in regard to the IACE program. *See id.* In order to prove disparate impact, Swanson must show that she was treated differently from similarly-situated male employees.

*See Jones,* 137 F.3d at 1311. Swanson, however, has failed to show that a male employee involved in coordinating the IACE program, or any other program, engaged in similar behavior and was treated differently. For this reason, Swanson cannot state a prima facie case of disparate treatment based on the third counseling.

This court finds that Swanson has failed to show a prima facie case of disparate treatment in regard to the written counselings. Defendants' Motion for Summary Judgment is therefore due to be granted regarding this aspect of Count I.

#### d. *Other complaints of disparate treatment*

Swanson alleges numerous other events which she claims were examples of discrimination on the basis of sex. These events include such things as being "run-over," "not listened to," and generally not taken seriously by male employees at CAP. Specifically, Swanson complains that certain male employees would not make eye contact with her, did not like to speak with her, and yelled at her once during a meeting. Swanson, however, has not provided substantial evidence that these incidents, even cumulatively, rose to the level of an adverse employment action. Nor has Swanson shown that these incidents were based on Swanson's membership in a protected class. Swanson has therefore failed to establish the third and fourth elements of her prima facie case: that she suffered an adverse effect on her employment and that this adverse effect resulted from differential application of work or disciplinary rules. *See Armstrong v. Flowers Hosp., Inc.,* 33 F.3d 1308, 1314 (11th Cir.1994). Swanson's disparate impact claim based on these incidents, therefore, cannot proceed.

Defendants' Motion for Summary Judgment is due to be granted regarding all of Swanson's disparate treatment claims (Count I).[4]

---

4. While the court finds that the incidents of which Swanson complains cannot support a separate claim of disparate treatment on the basis of gender, the court considers the incidents in the evaluation of Swanson's hostile environment sexual discrimination claim below.

### 2. Hostile Environment Sexual Harassment (Count II— Swanson)

■ Swanson's second count alleges that she was subjected to hostile environment sexual harassment by Albano and other CAP employees during her employment with CAP. As evidence of this harassment, Swanson relies on the evidence provided above in subsection IV. A.1., as well as these additional things: (1) Albano's alleged sexual advances toward her[5] and his alleged communications to other persons regarding Swanson's living arrangements,[6] (2) a speaker's use of the term "gentlemen" in addressing the audience at a meeting that Swanson and another female employee attended, (3) the alleged failure of CAP's EEO officers to satisfactorily investigate Swanson's allegations, and (4) the hostility expressed toward her division at CAP, which made her and others, including men, cry. See Swanson Depo. at 331, l. 11 through 334, l. 22; 1114, ll. 13–17; 570, ll. 21–23.

■ The Supreme Court has provided guidance for this court's evaluation of Swanson's hostile environment sexual harassment claim. Title VII is not limited to the prohibition of economic or tangible discrimination. See Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Rather, sexual harassment so "severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment violates Title VII." Faragher v. City of Boca Raton, 524 U.S. 775, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998)

(quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 64, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (internal quotation marks omitted)). For a valid claim of hostile environment sexual harassment, the harassing conduct must create both an objectively hostile or abusive environment—one that a reasonable person would find hostile or abusive—and a subjectively hostile or abusive environment—one that the victim subjectively perceives to be abusive. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21–22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). In determining whether an environment is sufficiently hostile, courts must examine all of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. Faragher, 118 S.Ct. at 2283.

Defendants contend that Swanson has not established a prima facie case of hostile work environment sexual harassment because the alleged harassment of which Swanson complains is not sufficiently severe and pervasive to alter a term, condition or privilege of Swanson's employment. See Faragher, 118 S.Ct. at 2283. The Supreme Court has stated that "simple teasing ... offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" Id. (internal citations omitted). Furthermore, these standards are designed to ensure that Title VII does not

---

5. The three incidents in which Swanson alleges Albano made improper sexual advances toward her include: (1) Albano's whispering in Swanson's ear of two or three questions regarding a certain individual's presence an ongoing meeting, (2) Albano's comment to Swanson at a cocktail party that she "cleaned up nice," and (3) a similar comment by Albano regarding Swanson's appearance made at another time. See Swanson Depo. at 785, l. 13 through 786, l. 2; 779, ll. 18–20; and 780, ll. 7–15.

6. Swanson alleges in her First Amended Complaint that Albano made public statements that Swanson had slept with her boyfriend in a hotel in Germany and that Swanson had been living with Isaacson, her supervisor, at his house. Compl. at ¶ 53. Swanson does not deny the truth of these statements, but complains of untrue, improper connotations communicated by such statements. See Swanson Depo. at 771, l. 21 through 773, l. 16; 774, ll. 2–22; 760, l. 21 through 761, l. 5. These allegations are thoroughly discussed in section IV.B.1. below, in the context of Swanson's claim for invasion of privacy.

become a "general civility code," and to filter out complaints about "the ordinary tribulations of the workplace...." *Id.* at 2283–84.

After an examination of the evidence, including the evidence presented in support of Swanson's disparate treatment claim, and the consideration of all of the relevant circumstances, this court finds that Swanson does not satisfy the requisite burden of showing severe and pervasive harassment which altered a term, condition or privilege of her employment. While Swanson may have subjectively felt that she was exposed to a hostile or abusive work environment, this court cannot say that a reasonable jury could find that an objective, reasonable person could find CAP's work environment hostile or abusive. Even taken cumulatively, this court finds that all of the incidents complained of by Swanson do not rise to the level of severe and pervasive harassment. For these reasons, Defendants' Motion for Summary Judgment on Swanson's hostile environment sexual harassment claim (Count II) is due to be granted.

### 3. *Retaliation (Count III—Swanson & Counts I & II—Isaacson)*

Title VII provides protection against retaliation for those who oppose illegal discrimination or participate in Title VII processes.[7] Claims of retaliation which are based on circumstantial evidence, like those of the parties in the present controversy, follow the traditional *McDonnell Douglas* tripartite framework of shifting burdens of proof. *Meeks v. Computer Assoc. Int'l,* 15 F.3d 1013, 1021 (11th Cir.1994). A plaintiff bringing a retaliation claim must establish a prima facie case by showing that (1) she engaged in statutorily protected expression, (2) there was subsequently an adverse employment action, and (3) there is a causal link between the protected expression and the adverse action. *Id.*

Title 42, § 2000e–3(a) recognizes two forms of statutorily protected conduct. An employee is protected from discrimination if (1) "he has opposed any practice made an unlawful employment practice by this subchapter" or (2) "he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter." *Clover v. Total System Servs., Inc.,* 157 F.3d 824, 827 (11th Cir.1998) (quoting 42 U.S.C. § 2000e–3(a)). These are known, respectively, as the "opposition" and "participation" clauses. Under the opposition clause, a plaintiff engages in "statutorily protected activity" when he protests an employer's conduct which is actually lawful, so long as he demonstrates "a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Little v. United Tech., Carrier Transicold Div.,* 103 F.3d 956, 960 (11th Cir.1997). It is, however, insufficient for a plaintiff "to allege his belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable." *Id.* Under the participation clause, a plaintiff engages in "statutorily protected activity" when he participates in an EEOC investigation, proceeding, or hearing. *See Clover,* 157 F.3d at 830.

In order to meet the second requirement of a prima facie case of retaliation under Title VII, the action complained of must rise to the level of an adverse employment action. Finally, the third element of a prima facie case of retaliation under Title VII presents a relatively light burden once the first two elements have been established. The causal link require-

---

7. The statutory language prohibiting retaliation provides:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3.

ment has been interpreted broadly to require the plaintiff merely to prove that protected activity and the adverse employment action are "not completely unrelated." *Meeks,* 15 F.3d at 1021.

 Once the plaintiff establishes a prima facie case, following traditional burden-shifting analysis, the employer must provide a legitimate, non-discriminatory reason for the adverse employment action. *Id.* If this burden is satisfied, the plaintiff has the opportunity show that the employer's proffered reason is a pretext for retaliation. *Id.* The plaintiff can prove pretext by showing that retaliation more likely motivated the defendant or indirectly by showing that the defendant's proffered explanation is unworthy of credence. *Hairston v. Gainesville Sun Pub. Co.,* 9 F.3d 913, 920 (11th Cir.1993).

### a. *Swanson*

 Swanson alleges that she was subjected to adverse employment actions because of her participation in the following protected activities: complaining about what she perceived to be unlawful and discriminatory employment practices, filing an administrative grievance regarding Albano with CAP's EEO Officers, and filing her first EEOC charge. Swanson alleges that Defendants retaliated against her by: terminating her employment, ejecting her from CAP's building while she was working as a volunteer, and withdrawing permission for her to serve as a CAP volunteer.

Defendants do not contest either of the first two elements of Swanson's retaliation claim. Instead, Defendants allege that Swanson's prima facie case fails on the causation element. Defendants allege that Swanson cannot establish a causal link. between her termination and the filing of her first EEOC charge because the decision to terminate her was made the day before she filed her charge and because CAP terminated Swanson's employment while she was on her way to the EEOC to file her charge. Defs.' Br. at 47–48. Defendants further allege that Albano did not

know that Swanson was filing a charge with the EEOC or that she had done so when he informed her of the termination. *Id.* at 48. Swanson, however, contends that CAP's corporate legal counsel knew that she was planning to contact the EEOC about her complaints because he provided her with the EEOC's address and telephone number. The court notes that, because of timing considerations, it may be difficult for Swanson to prove a causal connection between her filing of her first EEOC charge and her termination.

Swanson, however, need not rely solely on her first EEOC charge to show that she engaged in protected activity. While it is unclear from the record what Swanson's activities in opposition to perceived sexual discrimination at CAP were, it is clear that Swanson participated in protected activity under Title VII when she filed an administrative grievance against Albano on December 10, 1997 with CAP's EEO Officers. *See Rollins v. Fla. Dep't of Law Enforcement,* 868 F.2d 397, 400 (11th Cir.1989) ("the protection afforded by the statute [Title VII] is not limited to individuals who have filed formal complaints, but extends as well to those ... who informally voice complaints to their superiors or who use their employers' internal grievance procedures."); Pls.' Resp. at Ex. F. Swanson was fired, by Albano, on January 15, 1998.

Defendants allege that Swanson has not met the causation element of her prima facie case regarding the grievance because Swanson's grievance had been resolved and Albano did not consider the grievance in making his termination decision. In order to satisfy the causal link requirement, however, Swanson must simply prove that protected activity and the adverse employment action are "not completely unrelated." *Meeks,* 15 F.3d at 1021. Given the timing of these two events, this court finds that Swanson has met this burden and has shown a prima facie case of retaliation.

 Defendants allege, as a legitimate, non-discriminatory reason for the adverse

employment action, that Swanson was terminated for insubordination because of her refusal to sign and return her employee handbook acknowledgment forms, despite numerous reminders and orders to do so by various CAP personnel. *See* Albano Depo. at 140, ll. 16–18; Albano Aff. at 5; Swanson Depo. at 891, l. 20 through 892, l. 2 and Exs. 23–26. Swanson alleges, however, that Defendants' proffered reason for her termination is pretext for discrimination.

Swanson alleges that Albano's statement of the reasons for her termination is unworthy of belief because, in reality, he fired her in retaliation for the grievance that she filed against him. The court notes that, according to Albano's records, the first discussion regarding Swanson's termination occurred less than two weeks after the filing of her December 10, 1997 grievance against Albano. On December 19, 1997, Albano issued an ultimatum regarding Swanson to Isaacson, instructing him to tell Swanson that she if she did not sign and return the forms by the close of business that day, her employment was terminated; Albano met with Swanson that day and affirmed the ultimatum.[8] *See* Albano Aff. at 6 and Ex. W. While Swanson's termination may have resulted solely from her failure to return the forms, despite direct orders to do so, this court finds that the timing of the events is enough to raise a question of material fact as to whether Defendants' stated non-discriminatory reason is a pretext for retaliation in violation of Title VII.

The Eleventh Circuit has noted that although a defendant's stated non-discriminatory reason could potentially overcome any inference of retaliation, summary judgment is ordinarily inappropriate once a prima facie case of retaliation has been established. *Hairston,* 9 F.3d at 919–20. Given this precedent and the facts presented above viewed in the light most favorable to Swanson, this court finds that Swanson has shown the existence of a question of material fact regarding whether Defendants' proffered reason for her termination was pretext for retaliation. For these reasons, Defendants' Motion for Summary Judgment regarding Swanson's retaliation claim (Count III) is due to be denied.

### b. *Isaacson*

 Isaacson claims, in a closely related and consolidated lawsuit against CAP, that CAP retaliated against him in violation of Title VII. Isaacson alleges that he suffered two acts of retaliation: a "lockdown" of his computer which occurred while he was away from work with Swanson helping to file her first EEOC charge, and the termination of his employment with CAP following Isaacson's discussion of Swanson's case with persons other than CAP's attorneys. CAP, for its part, alleges that Isaacson cannot satisfy the elements of a prima facie case of retaliation for either event, and that, even if Isaacson could state a prima facie case of retaliation, CAP's actions are supported by legitimate, non-discriminatory reasons which Isaacson cannot show are pretexual.

 Isaacson first complains that, in retaliation for Isaacson's assistance in Swanson's filing of her first EEOC charge, he was locked out of his CAP computer. CAP responds first that this computer "lock down" does not rise to the level of an adverse employment action to satisfy the second element of a prima facie case of retaliation under Title VII. *See Meeks,* 15 F.3d at 1021. An employment action must affect a term or condition of employment and is not adverse merely because the employee dislikes it or disagrees with it. *Merriweather v. Ala. Dep't of Public Safety,* 17 F.Supp.2d 1260, 1274 (M.D.Ala.1998) (citations omitted). Rather, a term or condition of employment is affected if the adverse action has a demonstrable adverse impact on present or future employment performance or opportunity. *See id.*

---

8. The suggestion to terminate Swanson's employment originated with a December 17, 1997 memo from Bartlett. *See* Albano Aff. at 5 and Ex. S.

(quoting *Fortner v. State of Kansas,* 934 F.Supp. 1252, 1266 (D.Kan.1996), for the proposition that "[a] term or condition of employment may be said to have been affected if there is a 'demonstrable adverse impact on future employment opportunities or performances.' ").

Isaacson alleges that the computer lock down terrified his staff and prevented him from accessing documents and answering e-mail on the evening of January 15, 1998. *See* Isaacson Depo. at 222, l. 19 through 226, l. 2; 212, l. 4 through 219, l. 22. Isaacson's computer access was restored the following day. *Id.* at 184, l. 21 through 185, l. 17. Other than conclusory allegations that his staff members were "afraid for their jobs," Isaacson provides no evidence that the computer lock down had an adverse impact on his present or future employment performance or opportunity. *See Merriweather,* 17 F.Supp.2d at 1274. Isaacson alleges that he got behind on answering his e-mail, but does not allege that this delay had any repercussions to his overall job performance or opportunity. In the absence of such evidence, this court cannot find that a term or condition of Isaacson's employment was affected, and, therefore, finds that the computer "lock down" incident does not rise to the level of an adverse employment action under Title VII's retaliation provision.

Isaacson also alleges that CAP retaliated against him by terminating his employment in response to Isaacson's discussion of Swanson's discrimination case against with persons other than CAP's attorneys. CAP alleges that this retaliation claim must fail because: (1) Isaacson's retaliatory termination allegation was not included in his EEOC charge; (2) Isaacson cannot establish a prima facie case of retaliation; and/ or (3) Isaacson cannot show that CAP's legitimate, non-discriminatory reason for his termination as pretext for retaliation.

 As to CAP's first ground, it is unnecessary for a plaintiff to exhaust administrative remedies prior to filing suit for a retaliation claim growing out of an earlier charge; a district court has jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court. *Gupta v. East Texas State Univ.,* 654 F.2d 411, 414 (5th Cir.1981). Thus, Isaacson's retaliatory discharge claim is not, as CAP alleges, barred by his failure to include that charge in his EEOC charge.

 CAP alleges that Isaacson fails to establish a prima facie case of Title VII retaliation because he cannot show that he engaged in a protected activity, and because he cannot show a causal connection between any protected activity and his termination. The critical question is whether Isaacson's discussion of Swanson's lawsuit against CAP is a protected activity under Title VII. This first element is satisfied if Isaacson can show that he "opposed an unlawful employment practice which he reasonably believed had occurred." *Bigge v. Albertsons, Inc.,* 894 F.2d 1497, 1501 (11th Cir.1990). Isaacson acknowledges that he signed an order which restricted him from speaking to anyone, except CAP's attorneys, about Swanson's lawsuit. Isaacson Depo., Ex. 4 at 3. Isaacson alleges, however, that he considered the prohibition on discussing Swanson's case against CAP to be "an illegal order basically telling me not to talk about an illegal act." *Id.* at 63, ll. 5–7. Isaacson admits that he told CAP's Michigan wing commander and Ann Culver, a CAP group commander, that he felt Swanson was illegally discharged. *Id.* at 67, l. 6 through 68, l. 3.

 It is, however, insufficient for a plaintiff to allege that his belief in regard to the illegality the employer's activity was "honest and bona fide." *Little v. United Tech., Carrier Transicold Div.,* 103 F.3d 956, 960 (11th Cir.1997). Rather, "the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable." *Id.* Furthermore, the objective reasonableness of an employee's belief that his employer has engaged in an unlawful employment practice must

be measured against existing substantive law. *See Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1388 n. 2 (11th Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 509, 142 L.Ed.2d 422 (1998). This court has already found that Swanson has stated a prima facie case for retaliatory discharge and that there is a question of material fact as to whether Defendants' proffered legitimate non-discriminatory reason for Swanson's termination was a pretext for retaliation. *See supra* section IV.A.3.a. For that reason, this court finds Isaacson's belief that Swanson's termination was an unlawful employment practice reasonable. *See Bigge v. Albertsons, Inc.,* 894 F.2d at 1501.

■ Defendants allege that Isaacson's opposition activity is not protected under Title VII because it was not reasonable in view of CAP's interests in ensuring that its management-level employees refrain from publicly discussing on-going litigation, maintaining confidentiality regarding litigation matters, and enforcing employee loyalty. *See* CAP's Reply at 8–9, citing *Silver v. KCA, Inc.,* 586 F.2d 138, 141 (9th Cir.1978). The court is sensitive to CAP's concerns; however, Isaacson alleges that the forbidden statements were made, at most, to a CAP "wing commander" and a CAP "group commander," [9] and overheard by a CAP Board Member. Given the facts that Isaacson reasonably believed he was opposing a retaliatory discharge of Swanson, and that the forbidden statements were made, viewing the facts in the light most favorable to Isaacson, only to or in the presence of high-ranking CAP members, this court cannot find that Isaacson's statements were not opposition activity protected under Title VII.

■ Since CAP agrees that Isaacson was fired for his discussion of Swanson's case, an adverse employment action and the requisite causal connection have been established. This court, therefore, finds that Isaacson has stated a prima facie case of retaliation under Title VII.

■ The court must now evaluate CAP's proffered explanation for Isaacson's termination and determine whether Isaacson has shown that the explanation is pretext for retaliation. CAP's proffered non-retaliatory explanation for Isaacson's termination is that he was fired, not for opposing what he perceived as Swanson's unlawful discharge, but rather, for disobeying an order not to discuss Swanson's lawsuit, except with CAP's designated legal counsel. *See* Isaacson Depo. at Ex. 9. The court is, therefore, faced with a novel question: whether an employee's violation of a written order not to discuss a pending lawsuit, which involves employer action that the employee reasonably perceives to be unlawful, is a legitimate, non-discriminatory reason for the employer to terminate that employee.

Neither party points the court to any authority which indicates the proper resolution of this issue. The court notes, however, that in *Alexander v. Gardner–Denver Co.,* the Supreme Court stated, "we think it clear that there can be no prospective waiver of an employee's rights under Title VII." 415 U.S. 36, 51, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), *abrogation recognized by Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). In *Alexander,* the Court analyzed whether a plaintiff's unsuccessful challenge of an employment decision under a grievance/arbitration provision of a collective bargaining agreement foreclosed his right to sue or divested the federal courts of jurisdiction over his racial discrimination claim under Title VII. *Id.* at 42, 94 S.Ct. 1011. In *Gilmer,* the Court held that an agreement to submit all statutory claims to binding arbitration in an individual employment contract precluded the plaintiff's ADEA claim. 500 U.S. at 35, 111 S.Ct. 1647.

---

**9.** Isaacson alleges that the "group commander" is a "high-ranking CAP member." Defendants deny the allegation; however, they do not present any substantive evidence explaining the hierarchy or organization of CAP officials which contradicts Isaacson's allegation.

This case, however, does not present an issue of arbitration under contract law versus federal statutory right; rather, it presents issues of whether the disobediance of an order, which appears to conflict with an employee's right to oppose employment practices that he reasonably believes to be unlawful under Title VII, is a legitimate, non-retaliatory reason for terminating an employee. Title VII's remedial purpose would not be served by allowing an employer to enforce a "gag order" on employees who reasonably believe that an improper employment practice has occurred. While this court does not find Isaacson's choices of forum and method for opposition to be the most appropriate, neither does this court find that Isaacson's choices undermined CAP's personnel management and authority to the extent that his expression of opposition is unprotected. *Cf. O'Day v. McDonnell Douglas Helicopter Co.,* 79 F.3d 756, 763 (9th Cir.1996) ("the court must balance the purpose of the Act to protect persons engaged reasonably in activities ... opposing discrimination, against Congress' equally manifest desire not to tie the hands of employers in the objective selection and control of personnel.")

This court, therefore, finds, given the facts of this case, that a reasonable jury could find that CAP's proffered non-discriminatory rationale for Isaacson's discharge was a pretext for retaliation. For these reasons, CAP's Motion for Summary Judgment is due to be denied as to Isaacson's claim for retaliatory discharge, but, as explained above, granted as to Isaacson's claim for retaliation for the computer "lock down" incident.

## B. *State Law Claims*

Plaintiff Swanson also alleges claims under state law which arise out of her employment with and termination from CAP. These claims include: invasion of privacy by Defendant Albano, false arrest/ false imprisonment by CAP as a result of an alleged false complaint filed against Swanson by Albano, Bartlett, and/ or Bobbie Tourville, and conspiracy to have Swanson falsely arrested by the same persons.

### 1. *Invasion of Privacy (Count IV—Swanson)*

■ Swanson claims that Defendant Albano committed the tort of invasion of privacy against her by making two statements about her to others.[10] Specifically, Swanson alleges that Albano told CAP Brigadier General Bergman and Isaacson that Swanson slept with her boyfriend in a hotel room in Germany during an IACE event. *See* Swanson Depo. at 765, l. 21 through 766, l. 4. Swanson further alleges that Albano told CAP's Delaware Wing Commander that Swanson was staying at her director's (Isaacson's) house. *Id.* at 756, ll. 16–23. Swanson does not deny the technical truth of these two statements; however, she expresses concern that the statements implied that she had sexual relations with her boyfriend in Germany and that she had an improper relationship with Isaacson. Swanson alleges that neither implication is true and that Albano's communication of these statements to others constituted an invasion of her right to privacy.

■ The tort of invasion of privacy encompasses four types of wrongful conduct: (1) the intrusion upon the plaintiff's physical solitude or seclusion; (2) publicity

---

10. Swanson also alleges in her Response to Defendants' Motion for Summary Judgment that she was subjected to an invasion of privacy by two anonymous letters mailed to the Commander of Air University and the Air Education and Training Command which accused Swanson of having an adulterous affair with a former National Commander of CAP and the appearance of the same accusations in an unofficial publication which was circulated among members of the CAP National Board. The court notes that Swanson has not produced any evidence to connect the letters or the publication to Albano, who is the sole Defendant in Swanson's invasion of privacy count, and the court, therefore, declines to determine whether an invasion of Swanson's privacy resulted from the letters and/ or the publication.

which violates the ordinary decencies; (3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; and (4) the appropriation of some element of the plaintiff's personality for a commercial use. *See Phillips v. Smalley Maintenance Servs. Inc.*, 435 So.2d 705, 708 (Ala.1983). Swanson brings her invasion of privacy claim for conduct which she alleges violates the second strand, by giving publicity to private information, and the third strand, by putting the plaintiff in a false light in the public eye.

Under the second strand of the tort of invasion of privacy, Swanson alleges that Albano published these statements about her private life which were highly offensive to her and would have been highly offensive to any reasonable person. The Alabama Supreme Court has adopted the Restatement's version of the tort of invasion of privacy by giving publicity to private information. *See Johnston v.. Fuller*, 706 So.2d 700, 703 (Ala.1997). The Restatement provides that:

> One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that
>
> (a) would be highly offensive to a reasonable person, and
>
> (b) is not of legitimate concern to the public.

*Id.*, quoting Restatement (Second) of Torts § 652D. The Alabama Supreme Court has relied on comment a to § 652D to describe the key element of this tort, "publicity":

> 'Publicity,' as it is used in this Section, differs from 'publication,' as that term is used ... in connection with liability for defamation. 'Publication,' in that sense, is a word of art, which includes any communication by the defendant to a third person. 'Publicity,' on the other hand, means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowl-

edge. The difference is not one of the means of communication, which may be oral, written or by any other means. It is one of a communication that reaches or is sure to reach, the public.

> Thus it is not an invasion of the right of privacy, within the rule stated in this Section, to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons.

*Johnston*, 706 So.2d at 703, quoting Restatement (Second) of Torts § 652D cmt. a (1977).

Albano alleges that Swanson does not have a valid claim of invasion of privacy for publication of private facts because the facts were true and because Albano made the statements to a limited audience. Albano has produced no authority for his defense of truth to a claim for this branch of the tort of invasion of privacy. The court, however, finds Albano's second allegation supported by Alabama Supreme Court precedent. Swanson has not produced substantial evidence that Albano communicated the statements to the public at large or to a large enough number of persons that the statements were substantially certain to become one of public knowledge. *See Johnston*, 706 So.2d at 703. Rather, Albano notes that Swanson alleges only that Albano made these statements to a limited audience of three people, and that it is not an invasion of the right of privacy to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons. *Id.* The court finds that for these reasons, Swanson's invasion of privacy claim based on the publication of private facts cannot survive Defendants' Motion for Summary Judgment.

 Swanson has also brought her invasion of privacy claim under the theory of "false light" invasion of privacy, alleging that Albano's statements placed her in a false light because the statements were either not true or were "misleading in the extreme," as they would lead a listener to

believe that she was engaged in sexual activity with the persons named. *See* Compl. at ¶ 55. In *Schifano v. Greene County Greyhound Park*, 624 So.2d 178, 180 (Ala.1993), the Supreme Court of Alabama adopted the Restatement version of this branch of the tort of invasion of privacy. In *Schifano*, the court noted that the Restatement provides that:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*Id.*, quoting Restatement of Torts, 2d. § 625E.

The last sentence of Comment a. to this section provides, "[o]n what constitutes publicity and the publicity of application to a simple disclosure, see § 652D, Comment a, which is applicable to the rule stated here." Restatement (Second) of Torts § 652E cmt. a (1977). While the Alabama Supreme Court has not expressly adopted comment a. to § 652E, it has, as noted above, expressly adopted the comment to which it refers, in the context of the publication of private facts version of the tort of invasion of privacy. In light of the Alabama Supreme Court's express adoption of §§ 652D and 652E, and comment a. to § 652D, and Swanson's failure to provide contrary authority, this court finds comment a. to § 652E persuasive. For the same reasons noted above in the publication of private facts claim, this court finds that Swanson's false light invasion of privacy claim cannot survive Defendants' Motion for Summary Judgment, and summary judgment is due to be granted on all of Swanson's invasion of privacy claims.

## 2. *False Arrest/ False Imprisonment (Count V—Swanson)*

Swanson alleges that she was subjected to false arrest and/ or false imprisonment by CAP as a result of an alleged false complaint filed against Swanson by CAP employees who, Swanson alleges, conspired to have her falsely arrested. Swanson seeks to hold CAP liable for these individuals' actions under the doctrine of respondeat superior.

 False arrest, or false imprisonment, consists of "the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty." *Kmart Corp. v. Perdue*, 708 So.2d 106, 110 (Ala.1997), citing Ala.Code 1975 § 6–5–170. A false imprisonment requires a direct restraint of the person; "however, it is not necessary that there be confinement in a jail or a prison." *Crown Central Petroleum Corp. v. Williams*, 679 So.2d 651, 653 (Ala.1996). Rather, "[a]ny exercise of force, or the express or implied threat of force, by which in fact the other person is deprived of his liberty, compelled to remain where he does not wish to remain, or to go where he does not wish to go, is an imprisonment." *Id.*

 Defendants acknowledge that Swanson was detained by the security police on February 16, 1998. Defendants contend, however, that Defendant Bartlett had probable cause to report an unauthorized Maxwell Air Force Base parking decal on Swanson's car to the security police, giving the security police probable cause to detain Swanson and that, therefore, the detention was not unlawful. *See Lindsey v. Camelot Music, Inc.*, 628 So.2d 314, 315 (Ala.1993). Alabama Supreme Court case law defines probable cause as a state of facts that "would lead a man of ordinary caution and prudence to believe or entertain an honest or strong suspicion that the person arrested is guilty." *Id.*

Defendants allege that the facts surrounding Swanson's possession of a "permanent," three-year parking decal support

that Defendants had probable cause to report the unauthorized decal and Swanson's presence to the base security police. Defendants allege that Susie Parker, a CAP employee, reported the presence of a three-year base parking decal on Swanson's car to Defendant Bartlett. *See* Bartlett Depo. at 21, ll. 6–10. At the time that this report was made, on February 13, 1997, Swanson was working as a CAP volunteer, but had been terminated as a CAP employee and was, therefore, not authorized to have such a parking decal. *See id.* at 22, ll. 1–4. Bartlett also discovered that when Swanson was "out-processed" following her termination with CAP, instead of turning in her permanent three-year base decal, as required by CAP's out-processing procedures, she turned in a temporary, one-year parking card that had been issued to her on January 28, 1998, thirteen (13) days after her employment was terminated. *See* Bartlett Aff. at 2, & Atts. A & B. These facts support that Swanson had not been completely forthright in her compliance with CAP's out-processing procedures and that CAP had reason to suspect that Swanson was wrongfully in possession of a permanent, three-year parking decal following the termination of her employment with CAP.

After receiving the information about the three-year base decal on Swanson's car, Bartlett discussed the matter with his supervisor, Colonel Brown, and with CAP's general counsel. Bartlett Depo. at 24, ll. 9–15. Following this discussion,

Bartlett alleges that the base security police[11] were called, that two security police officers were dispatched to CAP, and that the security officers were informed of the situation.[12] *Id.* at 24, l. 20 through 25, l. 20. Bartlett alleges that one of the security officers stated that the security police wanted to retrieve the sticker from Swanson. *Id.* Colonel Brown, furthermore, alleges that one of the security officers requested that the security police be notified if Swanson returned to the base so that the security police could talk to her about the parking decal.[13] *See* Brown Depo. at 52, ll. 16–18.

Bartlett alleges that on February 16, 1998, Bobbie Jean Tourville called him at home[14] to inform him that Swanson was present at CAP. *See* Bartlett Depo. at 27, l. 19 through 28, l. 6. Bartlett further alleges that he then called the security police, explained the situation and the prior request by the security police that they be notified when Swanson returned to the base, and stated that Swanson was in the building. *Id.* at 28, ll. 11–18.

The base security desk blotter indicates that on February 16, 1998, the security police received a call from Bartlett reporting Swanson's presence on the base with an unauthorized decal, and that security officers were dispatched to investigate the matter. *See* Pls.' Resp. at Ex. C. Base security officers took Swanson to security police headquarters and informed her that she was not authorized to have a base

---

11. The security police are responsible for issues related to base access. *See* Bartlett Aff. at 2. Colonel Brown, furthermore, alleges that CAP, as a guest on the air force base, had a responsibility to notify the security police about the suspected unauthorized parking decal. *See* Brown Depo. at 52, ll. 9–15.

12. Swanson alleges that there is no record in the police blotter indicating that such a call or meeting ever occurred. Swanson, however, has neither shown that the recording of all calls and meetings is standard security police practice nor submitted a copy of the police blotter for the date in question. In the absence of any substantive evidence to show that this call and meeting did not occur, the

court must assume that the telephone call and meeting did, in fact, occur.

13. *Defendants submitted Motion to Supplement on December 21, 1998 (Doc. # 92).* This submission included additional evidence to bolster Defendants' factual allegations regarding the false arrest or false imprisonment claim. The court, however, finds it unnecessary to rely on this evidence in reaching its decision on summary judgment for this claim, and does not do so. The Motion is, therefore, denied as moot.

14. Bartlett states that he was at home because February 16, 1998 was a holiday. *See* Bartlett Depo. at 27, ll. 21–23.

decal because she did not have a valid military identification card. *See id.* Swanson wrote a statement, an officer watched Swanson scrape the decal off of her car window, and Swanson was allowed to leave. *See id.*

Given these facts, which are unrebutted by any evidence submitted by Swanson, the court finds that there are no genuine issues of material fact relevant to this claim, that Bartlett had probable cause to call the security police on February 16, 1998, and that Defendants, therefore, cannot be liable for false arrest or false imprisonment for Swanson's detention by the security police. *See Kmart Corp.,* 708 So.2d at 110 (noting, in the context of a merchant's detention of suspected shoplifters, when the merchant had probable cause to believe that the suspects had stolen merchandise, that it was error for the trial court not to grant the defendant's motions for a directed verdict and JNOV).

While evidence of this incident may be admissible as relevant to Swanson's retaliation claim, it is not sufficient to show a genuine issue of material fact to support this state law claim. Defendants' Motion for Summary Judgment on this count is due to be granted.

### 3. *Conspiracy (Count VII—Swanson)*

 Swanson alleges in her First Amended Complaint that CAP and three of its employees, Defendants Albano and/ or Bartlett, and/ or non-party · Bobbie Tourville, conspired to have her falsely arrested by base security police and ejected from the base. Under Alabama law, "[a] conspiracy is a combination to accomplish an unlawful end or to accomplish a lawful end by unlawful means." *Scott v. Commonwealth Land Title Ins. Co.,* 518 So.2d 102, 104 (Ala.1987). Defendants contend that they are entitled to summary judgment on this civil conspiracy count because Swanson's substantive state law claim for false arrest/ false imprisonment cannot survive the motion for summary judgment.

 This court finds this to be dispositive. "Where civil liability for a conspiracy is sought to be enforced, the conspiracy itself furnishes no cause of action. The gist of the action is not the conspiracy alleged but the wrong committed." *Scott,* 518 So.2d at 104 (citations omitted). This court found above that Defendant Bartlett had probable cause to call the base security police regarding Swanson's presence at CAP headquarters on the air force base with an unauthorized parking decal. His action, executed at the request of the base security police, was, therefore, lawful. The actions of the base security police, furthermore, have not been challenged as unlawful. Swanson, therefore, cannot show that any unlawful means were used or that any unlawful end resulted. *See Scott* 518 So.2d at 104. The court found above that Defendants were entitled to summary judgment on Swanson's false arrest/ false imprisonment claim; Swanson's conspiracy claim must, therefore, also fail under Alabama law. Summary judgment is due to be granted for Defendants on Swanson's state law conspiracy claim.

### V. *CONCLUSION*

For the reasons discussed above, Defendants' Motion for Summary Judgment, as to Swanson's claims, is due to be granted in part and denied in part. CAP's Motion for Summary Judgment, as to Isaacson's claims, is also due to be granted in part and denied in part. A separate order will be entered in accordance with this memorandum opinion.

### *ORDER*

In accordance with the Memorandum Opinion entered on this day, it is hereby ORDERED as follows:

1. Defendants' Motion to Strike Portions of the Affidavits of Brian M. Campbell and Hugh White (Doc. # 87) is DENIED as MOOT.

2. Defendants' Motion to Supplement Their Joint Evidentiary Submission (Doc. # 88) is DENIED as MOOT.

3. Defendants' Second Motion to Supplement Their Joint Evidentiary Submission (Doc. # 92) is DENIED as MOOT.

4. Defendants' Motion for Summary Judgment as to Plaintiff Swanson's claims (Doc. # 58) is DENIED as to Swanson's retaliatory discharge claim (Count III).

5. Defendants' Motion for Summary Judgment as to Plaintiff Swanson's claims (Doc. # 58) is GRANTED as to Counts I, II, IV, and V of Plaintiff Swanson's First Amended Complaint.

6. Defendant's Motion for Summary Judgment as to Plaintiff Isaacson's claims (Doc. # 60) is GRANTED as to Isaacson's claim of retaliation for the computer "lock down" incident.

7. Defendant's Motion for Summary Judgment as to Plaintiff Isaacson's claims (Doc. # 60) is DENIED as to Isaacson's claim of retaliatory discharge.

8. Defendants' Motion for Summary Judgment as to Plaintiff Swanson's State Law Conspiracy Claims (Doc. # 77) (Count VII) is GRANTED.

9. Paul Albano, Sr. and D.J. Bartlett are dismissed as parties Defendant.

10. This case will proceed to trial on the following claims: Swanson's retaliatory discharge claim against Civil Air Patrol under Title VII, and Isaacson's retaliatory discharge claim against Civil Air Patrol under Title VII.

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

On December 22, 1998, this court issued a Memorandum Opinion and Order addressing the Motions for Summary Judgment filed by the Defendants in this case (the "Opinion").[1] The case is presently before the court on a Motion to Reconsider, filed on January 5, 1999, by Defendant Civil Air Patrol (Doc. # 101). In this Motion to Reconsider, Defendant Civil Air Patrol ("CAP") requests that the court

revisit the portions of the Opinion addressing Plaintiff Swanson's and Plaintiff Isaacson's Title VII retaliation claims.

### II. DISCUSSION

As this court noted in a previous Motion to Reconsider, district courts are necessarily afforded substantial discretion in ruling on motions for reconsideration. *Sussman v. Salem, Saxon & Nielsen,* 153 F.R.D. 689 (M.D.Fla.1994). Motions for reconsideration generally serve a very narrow function: they are designed solely to correct manifest errors of law or fact or to present newly discovered evidence that could not have been discovered at the time of the original motion. *See* Fed.R.Civ.P. 60. CAP's Motion to Reconsider is based on CAP's perceived need to correct clear error.

### A. Swanson's Title VII Retaliation Claim

CAP contends that the court committed clear error by relying solely on the timing of Swanson's termination in relation to her protected activity to find a question of material fact as to whether CAP's reason for terminating Swanson was pretext for determination. The court, however, finds CAP's position to be without merit because the court did not rely solely on the temporal proximity of Swanson's protected activity and her termination in making its determination of the existence of a question of material fact regarding pretext.

CAP makes several arguments in support of its contention. First, CAP presents authority from other jurisdictions which supports the position that timing alone is insufficient to establish pretext in the context of a Title VII retaliation case directly in the context of a Title VII retaliation claim. *See Swanson v. General Servs., Admin.,* 110 F.3d 1180, 1188 (5th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 366, 139 L.Ed.2d 284 (1997). Next, CAP cites Eleventh Circuit authority, in the

1. In this Memorandum Opinion and Order, citations to the Opinion will be abbreviated "Op." and include the appropriate page number(s).

context of laws other than Title VII, which support the position that timing alone is insufficient to show pretext. *See Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278 (11th Cir.1997) (ADA); *Mize v. Jefferson City Bd. of Educ.,* 93 F.3d 739, 745 (11th Cir.1996) (First Amendment retaliation); *Dollar v. Shoney's, Inc.,* 981 F.Supp. 1417, 1420 (N.D.Ala.1997) (FMLA); *Dillon v. Carlton,* 977 F.Supp. 1155, 1160 (N.D.Fla.1997) (FMLA), *aff'd,* 161 F.3d 21 (11th Cir.1998) (Table). Finally, CAP quotes a portion of a sentence from the Opinion which provides that "the timing of the events is enough to raise a question of material fact as to whether Defendants' stated non-discriminatory reason is a pretext for retaliation in violation of Title VII." Op. at 20. The court agrees that, taken out of context, this statement is susceptible to an incorrect interpretation that the court relied on the timing of the events, without more, as sufficient to show pretext. The statement, however, was made in the context of a description of the underlying events and the nature of Swanson's protected activity.

In reaching its determination that Swanson had shown the existence of a material fact as to whether CAP's proffered non-discriminatory reason for Swanson's termination was mere pretext for retaliation, the court did not rely solely on the temporal proximity of Swanson's protected activity and her termination. Rather, the court found that the timing, coupled with the fact that Swanson's protected activity was an internal grievance complaining of unlawful harassment, against her, by the very person who fired her, was enough to show a material question of fact as to whether CAP's proffered non-discriminatory reason was pretext for retaliation.[2]

The court's final conclusion as to Swanson's Title VII retaliation claim was that, "[g]iven this precedent [3] and the facts presented above viewed in the light most favorable to Swanson, this court finds that Swanson has shown the existence of a question of material fact regarding whether Defendants' proffered reason for her termination was pretext for retaliation." Op. at 20. The "facts presented above" include a discussion of Swanson's allegation that CAP's statement of the reasons for her termination was unworthy of belief because, in reality, Albano fired her in retaliation for the grievance that she filed against him. *See* Op. at 20. Clearly, the court did not rely solely on timing considerations in its finding of a question of fact about pretext. *Cf. Dillon v. Carlton,* 977 F.Supp. 1155, 1160 (N.D.Fla.1997) (finding, in the context of a FMLA claim, that "the *timing* of [the plaintiff]'s termination *standing alone* is insufficient to raise an inference of pretext.") (emphasis added). As to Swanson's retaliation claim, the court relied on the circumstances surrounding CAP's decision to terminate Swanson's employment in addition to the timing of Swanson's termination following her participation in a protected activity. CAP's Motion to Reconsider, in regard to Swanson's claim of Title VII retaliation is, therefore, due to be denied.

### B. *Isaacson's Title VII Retaliation Claim*

CAP requests the court to reconsider its denial of summary judgment on Isaacson's Title VII retaliation claim on three grounds: (1) Isaacson's belief that Swanson's termination was illegal was not reasonable because the court incorrectly found that Swanson's retaliation claim was viable; (2) The court relied on an incorrect

---

2. Although the court did not state this fact in the Opinion, the person who terminated Swanson's employment with CAP acknowledges that he was aware that Swanson had filed a grievance against him when Swanson filed that grievance at CAP headquarters in December of 1997. *See* Albano Depo. at 207, 1. 13 through 209, 1. 3.

3. The precedent referred to is *Hairston v. The Gainesville Sun Publ'g Co.,* 9 F.3d 913 919–20 (11th Cir.1993), for the proposition that summary judgment is ordinarily inappropriate once a prima facie case of retaliation has been established.

assertion of fact that Isaacson discussed Swanson's termination only with "high-ranking CAP members;" and (3) Isaacson's discussion of Swanson's lawsuit was not protected activity under Title VII because CAP had a reasonable and significant interest in preventing the dissemination of information relating to Swanson's lawsuit. The court addresses each ground in turn and finds them to be without merit.

The court finds CAP's first ground for reconsideration, that Isaacson's belief that Swanson's termination was illegal was not reasonable because the court incorrectly found that Swanson's retaliation claim was viable, unpersuasive. As discussed above, despite CAP's renewed protestations, Swanson has stated a viable claim for retaliation in violation of Title VII.

CAP's second ground for reconsideration is that the court relied on an incorrect assertion of fact that Isaacson discussed Swanson's termination only with "high-ranking CAP members." The Opinion provides that, given "the facts that Isaacson reasonably believed he was opposing a retaliatory discharge of Swanson, and that the forbidden statements were made, viewing the facts in the light most favorable to Isaacson, only to or in the presence of high-ranking CAP members, this court cannot find that Isaacson's statements were not opposition activity protected under Title VII." Op. at 24.

In evaluating Isaacson's assertion that his comments were made only to or in the presence of "high-ranking CAP members," the court noted that the forbidden statements were made, at most, to a CAP "wing commander" and a CAP "group commander," and overheard by a CAP Board Member. *Id.* CAP contests the court's designation of the group commander as a "high-ranking CAP member" because the group commander serves CAP in a voluntary capacity, is not a CAP employee, and has no authority regarding CAP employee matters.

Even if the group commander could not fairly be considered a "high-ranking CAP member," this fact would not alter the court's analysis. The court's determination that Isaacson's discussion of Swanson's lawsuit with these three individuals was a protected activity is tied in with the court's analysis of CAP's third ground for reconsideration, that Isaacson's discussion of Swanson's lawsuit was not protected activity under Title VII because CAP had a reasonable and significant interest in preventing the dissemination of information relating to Swanson's lawsuit.

In addressing both of these grounds, the court emphasizes that Isaacson did not publicly disseminate critical information regarding Swanson's lawsuit. At most, Isaacson voiced an opinion that Swanson's discharge had been illegal in the presence of a small group of persons associated with CAP who held leadership positions in some capacity for CAP. The fact that one of these persons may not have had the ability to investigate Isaacson's concerns or to initiate corrective action does not strip Isaacson's statement of the status of protected opposition activity. CAP does not dispute that the two other persons who heard Isaacson's statement were "high-ranking CAP members," who could, conceivably, have instigated action to address Isaacson's concerns.

The court's Opinion noted that it was sensitive to CAP's concerns about ensuring that its management-level employees refrain from publicly discussing on-going litigation, maintaining confidentiality regarding litigation matters, and enforcing employee loyalty. Op. at 24. The court, however, balanced these concerns with Isaacson's right to oppose illegal employment practices under Title VII. The court found that Title VII's remedial purpose would not be served by allowing an employer to enforce an order not to discuss a lawsuit which the employee reasonably believed involved an improper employment practice. *Id.* at 26. The court then concluded that, "[w]hile this court does not find Isaacson's choices of forum and method for opposition to be the most appropriate, neither does this court find that Isaac-

son's choices undermined CAP's personnel management and authority to the extent that his expression of opposition is unprotected." *Id.* None of the arguments or authorities presented by CAP's current motion persuade the court that its balancing of the interests was in error. Accordingly, CAP's Motion for Reconsideration of the denial of Summary Judgment on Isaacson's Title VII retaliation claim is due to be denied.

## III. *CONCLUSION*

For the reasons discussed, CAP's Motion for Reconsideration is due to be and is ORDERED DENIED.